[No. S113466. June 23, 2005.]

MARINE FORESTS SOCIETY et al., Plaintiffs and Respondents, v. CALIFORNIA COASTAL COMMISSION et al., Defendants and Appellants.

2

8

**COUNSEL**

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Richard M. Frank and Tom Greene, Chief Assistant Attorneys General, J. Matthew Rodriquez, Assistant Attorney General, Joseph Barbieri, Alice Busching Reynolds and Lisa Trankley, Deputy Attorneys General, for Defendants and Appellants.

Robert Garcia, Katrina D. McIntosh; Law Office of J. William Yeates, J. William Yeates, Mary U. Akens, Keith G. Wagner; California Environmental Law Project and Laurens H. Silver for Planning and Conservation League, Sierra Club, Mexican American Legal Defense and Educational Fund, Environmental Defense Center, Natural Resources Defense Council, League for Coastal Protection, Monterey Bay Aquarium, Surfrider Foundation, Defenders of Wildlife, National Audubon Society-California, Amigos de Bolsa Chica, Big Sur Land Trust, Cal Beach Advocates, California Coastkeeper Alliance, California Coastal Protection Network, The Center for Law in the Public Interest, Earth Alert!, Heal the Bay, Latino Urban Forum, The Ocean Conservancy, Ocean Outfall Group, Orange County Coastkeeper, San Diego Baykeeper, Santa Barbara Channelkeeper, SLO Coast Alliance, Vote the Coast, Wetlands Action Network and Wildlands Restoration Team as Amici Curie on behalf of Defendants and Appellants.

The Zumbrun Law Firm, Ronald A. Zumbrun and Mark A. Teh for Plaintiffs and Respondents.

Sheppard, Mullin, Richter & Hampton, Joseph E. Petrillo, David P. Lanferman, Peter F. Ziblatt; Law Offices of Thomas D. Roth and Thomas D. Roth for California Building Industry Association, Home Builders Association of Northern California, Building Industry Legal Defense Foundation, Building Industry Association of San Diego and California Association of Realtors as Amici Curiae on behalf of Plaintiffs and Respondents.

James S. Burling, M. Reed Hopper and Anne M. Hayes for Pacific Legal Foundation as Amicus Curiae on behalf of Plaintiffs and Respondents.

Jenkins & Hogin, Christi Hogin, City Attorney, and Gregg Kovacevich for the City of Malibu as Amicus Curiae on behalf of Plaintiffs and Respondents.

Berger & Norton, Manatt, Phelps & Phillips, and Michael M. Berger for Signal Landmark and Hearthside Homes as Amici Curiae on behalf of Plaintiffs and Respondents.

Karen Fumi Ibara as Amicus Curiae on behalf of Plaintiffs and Respondents.

Cox, Castle & Nicholson and Stanley W. Lamport for Land Use Preservation Defense Fund as Amicus Curiae on behalf of Plaintiffs and Respondents.

Law Offices of Michael T. Larsen and Michael T. Larsen for Encinitas Country Day School, Inc., Kathleen Porterfield and M&M Development, LLC as Amici Curiae on behalf of Plaintiffs and Respondents.

Stan Furmanski as Amicus Curiae on behalf of Plaintiffs and Respondents.

Shaub, Williams & Nunziato, Edward E. Vaill and David R. Shaub for Californians for Local Coastal Planning as Amicus Curiae on behalf of Plaintiffs and Respondents.

Robert Clark as Amicus Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**GEORGE, C. J.**—This case involves a constitutional challenge to the provisions of the California Coastal Act (Coastal Act or Act) governing the appointment and tenure of the members of the California Coastal Commission (Coastal Commission or Commission). At the time this action was commenced, the applicable statutes provided, in part, that one-third of the voting members of the Coastal Commission were to be appointed by the Governor, one-third by the Senate Committee on Rules (Senate Rules Committee), and one-third by the Speaker of the Assembly, and further provided that all members of the Commission were to serve a two-year term and were eligible for reappointment for succeeding two-year terms but were removable throughout their term in office at the pleasure of their appointing authority. (Pub. Resources Code, § 30301, subds. (e), (f), former § 30312, subd. (b), as enacted by Stats. 1976, ch. 1330, § 1, p. 5970.)[1] In their initial cause of action, plaintiffs asserted that this statutory structure—by authorizing members of the legislative branch to appoint a majority of the voting members of the Commission and enabling each appointing authority to remove its appointees at will—rendered the Coastal Commission a "legislative body" for purposes of the separation of powers clause of the California Constitution and that such a body was precluded from engaging in executive or judicial functions, such as granting, denying, or conditioning a development permit, or hearing and determining a cease and desist order. The complaint sought declaratory and injunctive relief, including an order enjoining the Commission from engaging in the foregoing executive or judicial functions in the future.

The trial court granted summary adjudication in favor of plaintiffs on the separation of powers cause of action, and issued the requested injunctive relief, enjoining the Coastal Commission from granting, denying, or conditioning permits or issuing and hearing cease and desist orders. On appeal, the Court of Appeal affirmed the judgment rendered by the trial court, declaring that the statutory scheme was flawed in authorizing the Senate Rules Committee and the Speaker of the Assembly to remove a majority of the

---

[1] Unless otherwise indicated, all further statutory references are to the Public Resources Code.

voting members of the Commission at will, because such a structure created an improper subservience on the part of the Commission to the legislative branch.

In response to the Court of Appeals decision, and while the Coastal Commission's petition for review from that decision was pending in this court, the Legislature enacted, and the Governor signed, an urgency measure amending the pertinent provisions of the Coastal Act. (Stats. 2003, 2d Ex. Sess., ch. 1x, enacted Feb. 20, 2003, eff. May 20, 2003.) As amended, the statutory scheme continues to provide for appointment of one-third of the voting members of the Commission by the Governor, one-third by the Senate Rules Committee, and one-third by the Speaker of the Assembly, but now provides that each of the Commission members appointed by the Senate Rules Committee or by the Speaker of the Assembly shall serve a four-year term and is not removable at the pleasure of such member's appointing authority. (§§ 30301, subds. (e), (f), 30312, subds. (a)(2), (b)(2).) Each member appointed by the Governor, by contrast, continues to serve a two-year term and may be removed at the pleasure of the Governor. (§ 30312, subds. (a)(1), (b)(1).)

Although both parties initially focused the bulk of their briefing on the question of the validity of the statutory scheme in effect at the time this action was initiated, as we shall explain the governing authorities establish that the resolution of this appeal actually turns on the validity of the current statutory scheme. Under the controlling precedent, it is well established that when, as here, a judgment for injunctive relief is reviewed on appeal, the validity of the injunction is governed by the law in effect at the time the appellate court renders its decision. Because the statutory provisions upon which the decisions of the trial court and the Court of Appeal were based have been modified, our determination of the validity of the judgment granting injunctive relief necessarily rests upon an assessment of the validity of the revised statutory scheme as it presently exists.

For the reasons discussed below, we conclude that the current statutory provisions governing the composition of the Coastal Commission do not violate the separation of powers clause of the California Constitution. As we shall see, although plaintiffs' challenge to the current provisions relies heavily on a number of United States Supreme Court decisions holding that, under the separation of powers doctrine embodied in the federal Constitution, Congress has no authority to appoint an executive officer (see, e.g., *Buckley v. Valeo* (1976) 424 U.S. 1, 135–136 [46 L.Ed.2d 659, 96 S.Ct. 612]; *Myers v. United States* (1926) 272 U.S. 52, 117 [71 L.Ed. 160, 47 S.Ct. 21]), it is clear both from the history of the California Constitution and from the judicial authorities interpreting the separation of powers clause of our state Constitution, that the California Constitution, unlike the United States Constitution, does

not categorically preclude the Legislature from enacting a statutory provision authorizing the Legislature itself to appoint a member or members of an executive commission or board.

At the same time—and contrary to the argument advanced in this case by the Attorney General—we conclude that, as in other contexts in which one branch's actions potentially impinge upon the domain of a coordinate branch, the separation of powers clause of the California Constitution imposes limits upon the legislative appointment of executive officers. Consistently with past decisions that have addressed allegedly improper legislative intrusion upon the functions of the judicial branch, we conclude that the California separation of powers clause precludes the adoption of a statutory scheme authorizing the legislative appointment of an executive officer or officers whenever the statutory provisions as a whole, viewed from a realistic and practical perspective, operate to defeat or materially impair the executive branch's exercise of its constitutional functions. As we shall explain, a statute authorizing the legislative appointment of an executive officer may transgress this constitutional limitation in at least two distinct circumstances. First, such a statute would violate the separation of powers clause if legislative appointment to the particular office in question intrudes upon what might be characterized as the "core zone" of the executive functions of the Governor (or another constitutionally prescribed executive officer), impeding that official from exercising the independent discretion contemplated by the Constitution in the performance of his or her essential executive duties. Second, a statute providing for the legislative appointment of an executive officer also would violate the separation of powers clause if the statutory scheme, taken as a whole, permits the legislative appointing authority to retain undue control over an appointee's executive actions, compromising the ability of the appointed officer (or of the executive body on which the appointee serves) to perform the officer's (or the executive body's) authorized executive functions independently, without legislative coercion or interference.

After reviewing the current provisions of the Coastal Act under the foregoing standard, we conclude that in light of the nature of the Coastal Commission's functions, the origin, purpose, and operative effect of the Commission's current appointment and tenure structure, and the numerous safeguards incorporated within the Coastal Act that serve to ensure that the actions of Commission members adhere to statutory guidelines and are not improperly interfered with or controlled by the legislative appointing authority, the current provisions do not violate the state constitutional separation of powers clause.

Accordingly, because we uphold the constitutionality of the current provisions governing the composition and tenure of the Coastal Commission,

we conclude that the judgment rendered by the trial court, enjoining the Commission from undertaking the bulk of its statutorily authorized functions, must be reversed.

## I

Although the resolution of the legal issue presented by this case does not depend upon the facts underlying the administrative proceeding that generated this constitutional challenge to the composition of the Coastal Commission, to place the controversy in context we briefly set forth the background of the administrative proceeding.

Plaintiff Marine Forests Society (Marine Forests) is a nonprofit corporation whose purpose is the development of an experimental research program for the creation of so-called marine forests to replace lost marine habitat.[2] The organization's objective is to discover economically viable techniques facilitating the creation of large-scale marine forests where seaweed and shellfish growing on sandy ocean bottoms will replace lost marine habitat. As part of its project, Marine Forests began "planting" or depositing various materials, including used tires, plastic jugs, and concrete blocks, on a sandy plain of the ocean off Newport Harbor. The initial project was approved by the City of Newport Beach, the California Department of Fish and Game, and the California Integrated Waste Management Board, but Marine Forests did not seek or obtain permission for its activities from the Coastal Commission.

In June 1993, the staff of the Coastal Commission informed Marine Forests that it was required to apply to the Commission for a permit to conduct its activities on the ocean floor off Newport Harbor. In 1995, Marine Forests applied for an "after-the-fact" permit. In April 1997, the Commission denied Marine Forests' application for the permit and thereafter directed its staff to commence enforcement proceedings against Marine Forests to compel it to cease and desist performing the contested operations. In 1999, the Commission's executive director issued a "Notice of Intent to Commence Cease and Desist Order Proceedings" against Marine Forests.

In response to the issuance of the notice of intent to commence cease and desist proceedings, Marine Forests filed the present proceeding in superior court for declaratory and injunctive relief, seeking to enjoin the Commission from pursuing enforcement proceedings against it. The complaint filed by Marine Forests maintained, in the initial cause of action, that the Coastal

---

[2] The complaint was brought in the name of both Marine Forests and Rodolphe Streichenberger, the founder, president, and chief executive officer of Marine Forests. For convenience, we refer to plaintiffs collectively as Marine Forests.

Commission lacked authority to pursue enforcement proceedings, asserting that because a majority of the voting members of the Commission were appointed by the Senate Rules Committee and the Speaker of the Assembly and served at the will of their appointing authority, the Coastal Commission must be considered a "legislative body" for purposes of the separation of powers clause of the California Constitution and that the Commission therefore lacked the authority either to grant, deny, or condition a permit (a power the complaint characterized as an "executive power") or to conduct a hearing and issue a cease and desist order (a power the complaint characterized as a "judicial power"). Shortly after the filing of the complaint, both parties moved for summary adjudication on the separation of powers cause of action. The trial court granted summary adjudication in favor of Marine Forests, concluding that the circumstances that a majority of the voting members of the Commission are appointed by members of the Legislature and that the Commission members serve at the pleasure of their appointing authority render the Commission "a legislative body." The trial court held that the Commission, "as a legislative body, is enjoined from exceeding its jurisdiction and violating the Separation of Powers Clause of the California Constitution which precludes it from granting, denying, or conditioning permits or issuing and hearing cease and desist orders."

On appeal, the Court of Appeal affirmed the judgment rendered by the trial court, concluding that "the Commission's interpretation and implementation of the California Coastal Act of 1976 is an executive function, and that the appointment structure giving the Senate Committee on Rules and the Speaker of the Assembly the power not only to appoint a majority of the Commission's voting members but also to remove them at will contravenes the separation of powers clause of California's Constitution. The flaw is that the unfettered power to remove the majority of the Commission's voting members, and to replace them with others, if they act in a manner disfavored by the Senate Committee on Rules and the Speaker of the Assembly makes those Commission members subservient to the Legislature. In a practical sense, this unrestrained power to replace a majority of the Commission's voting members, and the presumed desire of those members to avoid being removed from their positions, allows the legislative branch not only to declare the law but also to control the Commission's execution of the law and exercise of its quasi-judicial powers."

After the Court of Appeal rendered its decision and while the petition for review was pending in this court, the Legislature passed, and the Governor signed, urgency legislation providing that the members of the Coastal Commission who are appointed by the Senate Rules Committee and by the Speaker of the Assembly shall serve four-year terms and no longer are removable by the appointing authority, rather than serving two-year terms at the pleasure of their appointing authority. The members of the Commission

who are appointed by the Governor continue to serve two-year terms at the pleasure of their appointing authority. (Pub. Resources Code, § 30312, as amended by Stats. 2003, 2d Ex. Sess, ch. 1x.)

In light of the importance of the issues raised by this case, we granted review. Our order granting review directed the parties to brief, in addition to the issue set forth in the petition for review relating to the validity of the statutory scheme addressed by the Court of Appeal, the following issues: (1) In light of the February 2003 amendment to the relevant provisions of the Coastal Act, is the composition of the Coastal Commission currently vulnerable to a separation of powers challenge, and (2) if the Court of Appeal was correct in finding that the pre-2003 Coastal Act provisions relating to the composition and tenure of the Coastal Commission violated the state separation of powers clause, what effect does such a conclusion have upon the past and currently pending decisions of the Coastal Commission?

We have received extensive briefing, both from the parties and from numerous amici curiae in support of each of the parties.

## II

The California Coastal Act of 1976 had its origin in an initiative measure, the Coastal Zone Conservation Act (popularly known as Proposition 20), passed by the voters in the November 1972 general election. The 1972 initiative measure created a statewide California Coastal Zone Conservation Commission and six regional coastal conservation commissions that were charged, among other responsibilities, with the duty of preparing a plan for land use and development within the coastal zone that was to be submitted to the Legislature on or before December 1, 1975. (Former §§ 27300–27320, enacted by Prop. 20, Nov. 7, 1972 Gen. Elec. and repealed by Stats. 1974, ch. 897, § 2, p. 1900, eff. Jan. 1, 1977.) The coastal zone conservation commissions also were granted the authority to issue permits to control development within each region pending the enactment of a statewide plan. (Former §§ 27400–27403.)

As established by the 1972 initiative measure, the statewide commission was composed of 12 members—six representatives from the regional commissions (one selected by each regional commission) and six representatives of the public who were not members of any regional commission and were appointed "equally by the Governor, the Senate Rules Committee, and the Speaker of the Assembly." (Former § 27202, subd. (d), enacted by Prop. 20, Nov. 7, 1972 Gen. Elec. and repealed by Stats. 1974, ch. 897, § 2, p. 1900, eff. Jan. 1, 1977.) The regional commissions were composed of a combination of local elected officials and public representatives. Like the public

representatives of the statewide commission, the public representatives of the regional commissions also were appointed equally by the Governor, the Senate Rules Committee, and the Speaker of the Assembly. (*Ibid.*)

While the 1972 initiative measure was in effect, a question arose whether the public members of the regional and statewide commissions who had been appointed by the Governor, the Senate Rules Committee, and the Speaker of the Assembly had the right to remain in office for the life of the commissions (under the initiative measure, the commissions—as well as the Coastal Zone Conservation Act itself—were to expire on January 1, 1977, when all of the tasks prescribed by the act were required to be completed) or whether all of these members served at the pleasure of their appointing authority. In *Brown v. Superior Court* (1975) 15 Cal.3d 52 [123 Cal.Rptr. 377, 538 P.2d 1137], this court concluded that the members of the commissions served at the pleasure of their appointing authority, relying on the circumstances (1) that the Coastal Zone Conservation Act contained no provision specifying a term of office for the members of the regional or statewide commissions, and (2) that California law—dating from the California Constitution of 1849—explicitly has provided that whenever the duration of any office is not provided by law, the office is held at the pleasure of the appointing authority. (Cal. Const. of 1849, art. XI, § 7; Cal. Const. of 1879, art. XX, § 16; Gov. Code, § 1301.) In reaching this conclusion, the court in *Brown* rejected the contention that because the terms of all commission members necessarily would end on January 1, 1977—when the act would expire—the act properly should be interpreted to grant all commission members a fixed term lasting until January 1, 1977. This court explained that "[n]othing in that limited duration . . . suggests that the drafters or voters intended to confer upon a public representative a term of office equal to the duration of the commission, and thus deny state administrations elected after January of 1973 any role in the selection of those representatives. The drafters and voters could reasonably choose to establish a commission of limited duration, but one composed of politically responsive members subject to removal by elected officials." (*Brown v. Superior Court, supra,* 15 Cal.3d 52, 56.) In *Brown,* no separation of powers issue was raised or decided.

The commissions created by the 1972 initiative measure completed their work in a timely fashion and submitted a proposed coastal plan to the Legislature in December 1975. The following year the Legislature enacted the California Coastal Act of 1976, a very lengthy and comprehensive statutory scheme aimed at protecting the coastal zone. (§§ 30000–30900.)[3]

---

[3] The Coastal Act contains a lengthy series of legislative findings and declarations. (See §§ 30001, 30001.2, 30001.5, 30002, 30004, 30006, 30006.5, 30007.5.)

Section 30001.5 "declares that the basic goals of the state for the coastal zone are to:

"(a) Protect, maintain, and, where feasible, enhance and restore the overall quality of the coastal zone environment and its natural and artificial resources.

■ The Coastal Act created the Coastal Commission as the entity with the primary responsibility for the implementation of the provisions of the Coastal Act (§ 30330) and designated the Commission "the successor in interest to all remaining obligations, powers, duties, responsibilities, and interests" of the statewide and regional coastal zone conservation commissions established by the 1972 initiative measure. (§ 30331.)

With regard to the selection and tenure of the membership of the Coastal Commission—the issues central to the present proceeding—the Coastal Act set forth detailed provisions governing each of these matters.

The Coastal Act provides that the Coastal Commission consists of 16 members, 12 voting and three nonvoting. (§ 30301.)[4] The 12 voting members of the Coastal Commission consist of "[s]ix representatives of the public from the state at large" and "[s]ix representatives selected from six coastal regions." (§ 30301, subds. (d), (e).)

With regard to the six public members, the Governor, the Senate Rules Committee, and the Speaker of the Assembly each select two such members. (§ 30301, subd. (e).)[5]

---

"(b) Assure orderly, balanced utilization and conservation of coastal zone resources taking into account the social and economic needs of the people of the state.

"(c) Maximize public access to and along the coast and maximize public recreational opportunities in the coastal zone consistent with sound resources conservation principles and constitutionally protected rights of private property owners.

"(d) Assure priority for coastal-dependent and coastal-related development over other development on the coast.

"(e) Encourage state and local initiatives and cooperation in preparing procedures to implement coordinated planning and development for mutually beneficial uses, including educational uses, in the coastal zone."

[4] The three nonvoting members of the Coastal Commission are: (1) the Secretary of the Resources Agency, (2) the Secretary of the Business and Transportation and Housing, and (3) the Chairperson of the State Lands Commission. (§§ 30301, subds. (a)–(c), 30301.5)

The two agency secretaries are appointed by the Governor (subject to Senate confirmation) and serve at the pleasure of the Governor. (Gov. Code, §§ 12800, 12801.) The State Lands Commission is an entity in the Resources Agency (Gov. Code, § 12805), consisting of the Controller, the Lieutenant Governor, and the Director of Finance (§ 6101), and the Office of Chairperson of the State Lands Commission traditionally has rotated on an annual basis between the Controller and the Lieutenant Governor. (See, e.g., <http://archives.slc.ca.gov/Meeting_Summaries/Current_Meeting/Commission_Meeting_Summaries.htm> [as of June 23, 2005].)

[5] Under the Standing Rules of the Senate, the Senate Rules Committee consists of the President pro Tempore of the Senate, who serves as chair, and four other members of the Senate elected by the Senate.

With regard to the six coastal regional representatives, the Governor selects one member from the north coast region (consisting of the Counties of Del Norte, Humboldt, and Mendocino) and one member from the south central coast region (consisting of the Counties of San Luis Obispo, Santa Barbara, and Ventura), the Speaker of the Assembly selects one member from the central coast region (consisting of the Counties of San Mateo, Santa Cruz, and Monterey) and one member from the San Diego coast region (consisting of San Diego County), and the Senate Rules Committee selects one member from the north central coast region (consisting of the Counties of Sonoma and Marin, and the City and County of San Francisco) and one member from the south coast region (consisting of the Counties of Los Angeles and Orange). (§ 30301, subd. (e).) In addition, as to the selection of the regional representatives, the Act provides that the county boards of supervisors and city selection committees within each region shall propose multiple nominees (consisting of county supervisors or city council members who reside in the region) to the appointing authority, and further provides that the appointing authority must make a selection from the nominees proposed by the local governmental entities. (§ 30301.2.)[6]

The Coastal Act, as initially enacted in 1976, provided that any member appointed by the Governor, the Senate Rules Committee, or the Speaker of the Assembly "shall serve for two years at the pleasure of their appointing power" and "may be reappointed for succeeding two-year periods." (Former § 30312, subd. (b), as enacted by Stats. 1976, ch. 1330, p. 5970.)[7] The Act further specified that "[v]acancies that occur shall be filled . . . in the same manner in which the vacating member was selected or appointed." (§ 30313.)[8]

---

[6] The Act provides that if the appointing authority notifies the local bodies that none of the first group of nominees is acceptable, the appointing authority may request an additional set of nominees. If the appointing authority requests an additional set of nominees, the appointing authority must make the appointment from such nominees. (§ 30301.2, subd. (b).)

[7] The Act further initially provided that although any member who qualified for membership because of the office he or she held as a local elected official generally served at the pleasure of his or her appointing authority, the membership of such an official on the Commission would terminate 60 days after his or her elected term of office ended (or sooner if a replacement was appointed by the appropriate appointing authority).

[8] In addition to the foregoing provisions, the Coastal Act—explicitly recognizing "that the duties, responsibilities, and quasi-judicial actions of the commission are sensitive and extremely important for the well-being of current and future generations[,] and that the public interest and principles of fundamental fairness and due process of law require that the commission conduct its affairs in an open, objective, and impartial manner free of undue influence and the abuse of power and authority" (§ 30320)—included a separate article, entitled Fairness and Due Process (§§ 30320–30329), that precludes Commission members from conducting any "ex parte communication" with any person who has a financial interest in any matter before the Commission, unless the member fully discloses the communication to the Commission on the record of the proceeding.

For more than two decades after the creation of the Coastal Commission in 1976, the Commission operated under the foregoing statutory provisions without serious constitutional challenge. In the present proceeding, however, both the trial court and the Court of Appeal ruled that the foregoing statutory provisions governing the appointment and tenure of Commission members violated the separation of powers clause of the California Constitution.

As noted above, in reaching its determination the Court of Appeal explained that in its view "[t]he flaw [in the statutory scheme] is that the unfettered power to remove the majority of the Commission's voting members, and to replace them with others, if they act in a manner disfavored by the Senate Committee on Rules and the Speaker of the Assembly[,] makes those Commission members subservient to the Legislature." Further, the Court of Appeal emphasized that its "legal conclusion—that the process for appointing voting members of the Commission violates the separation of powers doctrine—is limited to the specific facts of this case, where a majority of the Commission's voting members are appointed by the legislative branch and *may be removed at the pleasure of the legislative branch* and there are no safeguards protecting against the Legislature's ability to use this authority to interfere with the Commission members' executive power to execute the laws. We express no opinion regarding the propriety of legislative appointments to administrative agencies under circumstances different than presented here." (Court of Appeal's italics.)

▮ Shortly after the Court of Appeal rendered its decision in this matter, the Legislature passed, and the Governor signed, an urgency measure amending the Coastal Act to provide that members of the Coastal Commission who are appointed or selected by the Senate Rules Committee or by the Speaker of the Assembly shall serve four-year terms and are not removable at the pleasure of their appointing authority. (§ 30312, subds. (a)(2), (b)(2), as amended by Stats. 2003, 2d Ex. Sess., ch. 1x, § 1.) Under the new legislation, members of the Commission who are appointed by the Governor, by contrast, continue to serve two-year terms at the pleasure of the Governor. (§ 30312, subds. (a)(1), (b)(1).)[9] The revised statute further provides that members appointed by the Senate Rules Committee or by the Speaker of the Assembly may be reappointed for succeeding four-year terms, and members appointed by the Governor may be reappointed for succeeding two-year terms. (§ 30312, subd. (b)(1), (2).)

The parties and amici curiae initially directed the bulk of their briefing to the question whether the statutory provisions governing the appointment and

---

[9] Under the amended statute, as under the prior version, a member of the Commission who qualifies for membership because he or she holds a specified office as a locally elected official ceases to be a member of the Commission 60 days after the termination of his or her term of office as a locally elected official. (§ 30312, subds. (a), (b).)

tenure of members of the Coastal Commission that were in effect prior to the 2003 amendments violated the separation of powers clause of the California Constitution. As we shall explain, however, the governing decisions establish that the resolution of the case before us requires us to determine the validity of the *current* statutory provisions, rather than the *prior* provisions in effect at the time of the rulings rendered by the trial court or the Court of Appeal. Accordingly, after discussing the authorities underlying this threshold procedural point, we shall turn to the substantive question whether the current Coastal Act provisions relating to the appointment and tenure of the members of the Coastal Commission violate the separation of powers clause of the California Constitution.

## III

As noted, the proceeding before us is an appeal from a judgment granting injunctive relief in favor of Marine Forests. Although Marine Forests earlier had filed an application with the Coastal Commission for an after-the-fact permit and had been denied such a permit, the present proceeding is not an administrative mandate proceeding brought by Marine Forests to contest the permit denial, but rather is a separate action brought by that party to obtain an injunction prohibiting the Coastal Commission from granting, denying, or conditioning permits and from hearing and determining cease and desist orders in the future. As requested by Marine Forests, the trial court granted such injunctive relief on the basis of plaintiff's separation of powers claim, and the Coastal Commission appealed from that judgment. Thus, the question before us on this appeal is the validity of the judgment granting injunctive relief.

With the case in this posture, it is clear under a long and uniform line of California precedents that the validity of the judgment must be determined on the basis of the current statutory provisions, rather than on the basis of the statutory provisions that were in effect at the time the injunctive order was entered. As observed by Witkin: "Because relief by injunction operates in the future, appeals of injunctions are governed by the law in effect at the time the appellate court gives its decision." (6 Witkin, Cal. Procedure (4th ed. 1997) Provisional Remedies, § 399, p. 324 & cases cited; see also 9 Witkin, Cal. Procedure, *supra*, Appeal, § 332, p. 373.)

The case of *Building Industry Assn. v. City of Oxnard* (1985) 40 Cal.3d 1 [218 Cal.Rptr. 672, 706 P.2d 285] provides an apt illustration of this principle. In the *Building Industry* case, after the City of Oxnard enacted an ordinance imposing a "Growth Requirements Capital Fee" on new developments, the plaintiff, an association representing the construction industry, brought an action seeking an injunction against enforcement of the ordinance.

The trial court denied injunctive relief and the plaintiff appealed. While the appeal was pending, the city amended the challenged ordinance. On appeal before this court, the plaintiff contended that the modification of the ordinance had no bearing on the resolution of the appeal, but we rejected that contention, explaining that "past California decisions establish that in proceedings of this nature—where injunctive relief against a legislative enactment is sought—the relevant provision for purposes of the appeal is the measure which is in effect at the time the appeal is decided." (40 Cal.3d at p. 3.)

Numerous California decisions have applied this rule. (See, e.g., *Kash Enterprises, Inc. v. City of Los Angeles* (1977) 19 Cal.3d 294, 306, fn. 6 [138 Cal.Rptr. 53, 562 P.2d 1302] ["Under settled principles, the version of the ordinance in force at present is the relevant legislation for purposes of this appeal [of an order denying injunctive relief]."]; *Tulare Dist. v. Lindsay-Strathmore Dist.* (1935) 3 Cal.2d 489, 527–528 [45 P.2d 972] ["the rule is well settled that on appeals involving injunction decrees, the law in effect when the appellate court renders its opinion must be applied"].)

Accordingly, in resolving this appeal from the trial court's judgment granting injunctive relief against the Coastal Commission, we must determine whether the injunction should be affirmed in light of the current statutory provisions. If the current statutory provisions are constitutional, the injunction prohibiting the Commission from granting, denying, or conditioning permits in the future (or from holding hearings on and determining cease and desist orders) cannot be upheld on appeal.

We now turn to the question of the constitutionality of the current Coastal Act provisions under the California separation of powers clause.

## IV

Article III, section 3 of the California Constitution—this state's separation of powers clause—provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."

In discussing this constitutional provision in *Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45 [51 Cal.Rptr.2d 837, 913 P.2d 1046] (*County of Mendocino*), we explained: "Although the language of California Constitution article III, section 3, may suggest a sharp demarcation between the operations of the three branches of government, California decisions have long recognized that, in reality, the separation of powers doctrine ' "does not mean that the three departments of our government are not in many respects

mutually dependent" ' [citation], or that the actions of one branch may not significantly affect those of another branch. Indeed, upon brief reflection, the substantial interrelatedness of the three branches' action is apparent and commonplace: the judiciary passes upon the constitutional validity of legislative and executive actions, the Legislature enacts statutes that govern the procedures and evidentiary rules applicable in judicial and executive proceedings, and the Governor appoints judges and participates in the legislative process through the veto power. Such interrelationship, of course, lies at the heart of the constitutional theory of 'checks and balances' that the separation of powers doctrine is intended to serve." (13 Cal.4th at pp. 52–53.)

█ In *County of Mendocino*, we continued: "At the same time, [the separation of powers] doctrine unquestionably places limits upon the actions of each branch with respect to the other branches. The judiciary, in reviewing statutes enacted by the Legislature, may not undertake to evaluate the wisdom of the policies embodied in such legislation; absent a constitutional prohibition, the choice among competing policy considerations in enacting laws is a legislative function. [Citation.] The executive branch, in expending public funds, may not disregard legislatively prescribed directives and limits pertaining to the use of such funds. [Citation.] And the Legislature may not undertake to readjudicate controversies that have been litigated in the courts and resolved by final judicial judgment. [Citations.]" (*County of Mendocino, supra,* 13 Cal.4th 45, 53.) As we more recently expressed this point: "The separation of powers doctrine limits the authority of one of the three branches of government to arrogate to itself the core functions of another branch." (*Carmel Valley Fire Protection Dist. v. State of California* (2001) 25 Cal.4th 287, 297 [105 Cal.Rptr.2d 636, 20 P.3d 533].)

█ In the present case we address a separation of powers challenge to the Coastal Commission. Like many other modern administrative agencies established by the Legislature, the Coastal Commission is authorized (by the Coastal Act) to perform a variety of governmental functions, some generally characterized as "executive," some "quasi-legislative," and some "quasi-judicial." As a general matter, the Commission performs an "executive" function insofar as it carries out programs and policies established by the Legislature, and the Commission is included for administrative purposes in the Resources Agency, a part of the executive branch. (§ 30300.) The Commission performs a "quasi-legislative" function when it engages in rulemaking through the adoption of regulations (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 168 [188 Cal.Rptr. 104, 655 P.2d 306]), and a "quasi-judicial" function when it passes upon applications for coastal development permits (*Davis v. California Coastal Zone Conservation Com.* (1976) 57 Cal.App.3d 700, 707 [129 Cal.Rptr. 417]), when it reviews the validity of a local government's coastal program (*City of Chula Vista v. Superior Court* (1982) 133 Cal.App.3d 472, 488 [183 Cal.Rptr. 909]),

and when it issues cease and desist orders with regard to unauthorized development (*Ojavan Investors, Inc. v. California Coastal Com.* (1994) 26 Cal.App.4th 516, 528 [32 Cal.Rptr.2d 103]).

As the Court of Appeal recognized, however, the constitutional propriety of an administrative agency's performance of such varied functions long has been firmly established under California law (see, e.g., *Jersey Maid Milk Products v. Brock* (1939) 13 Cal.2d 620, 658–659 [91 P.2d 577]; *Gaylord v. City of Pasadena* (1917) 175 Cal. 433, 436–440 [166 P. 348]), and Marine Forests' separation of powers claim does not rest simply upon the varied nature or scope of the governmental authority granted to, and exercised by, the Coastal Commission. Instead, Marine Forests asserts there is a fatal constitutional flaw in the statutory provisions governing the appointment and tenure of the members of the Commission authorized to perform these varied functions. Marine Forests maintains that because the Commission, in light of its functions, properly must be considered part of the executive branch, the current statutory provisions violate the separation of powers clause embodied in the California Constitution by providing that a majority of the voting members of the Commission are to be appointed by, and are subject to reappointment by, officials or entities that are part of the legislative branch. Although we agree that the Coastal Commission properly is considered part of the executive branch, for the reasons set forth below we do not agree that the challenged statutory provisions governing the appointment and reappointment of Commission members violate the separation of powers clause of the California Constitution.

In support of its separation of powers argument, Marine Forests relies in part upon a number of decisions of the United States Supreme Court interpreting and applying the separation of powers principles embodied in the United States Constitution. In *Buckley v. Valeo, supra*, 424 U.S. 1, 109–143, for example, the high court addressed a constitutional challenge to the provisions of a federal statute governing the appointment of the members of the Federal Election Commission—a body, like the Coastal Commission, charged with a variety of functions similar to those exercised by most contemporary administrative agencies. The statute in question in *Buckley* provided that of the six voting members of the Federal Election Commission, two were to be appointed by the President pro tempore of the United States Senate (upon the recommendations of the majority and minority leaders of the Senate), two by the Speaker of the United States House of Representatives (upon the recommendations of the majority and minority leaders of the House), and two by the President. The statute further required that each of the six voting members be confirmed by a majority of both houses of Congress and also prohibited each of the three appointing authorities from choosing both of its appointees from the same political party.

In challenging the statute, the plaintiffs in *Buckley* maintained that because the Federal Election Commission was authorized to exercise wide-ranging rulemaking and enforcement powers, "Congress is precluded under the principle of separation of powers from vesting in itself the authority to appoint those who will exercise such authority." (*Buckley v. Valeo, supra*, 424 U.S. 1, 118.) In sustaining the plaintiffs' separation of powers challenge to the federal statutory provisions at issue in that case, the high court in *Buckley* relied principally upon the appointments clause—article II, section 2, clause 2—of the United States Constitution, concluding that under this provision neither Congress nor its officers could be granted the authority to appoint an officer who is to exercise such executive authority. (424 U.S. at pp. 124–137.) Because the members of the Federal Election Commission had not been appointed in conformity with the requirements of the appointments clause, the court in *Buckley* held that under the federal separation of powers doctrine the commission was precluded from exercising the broad administrative powers that the statute empowered it to perform. (424 U.S. at pp. 137–141.)

The high court's holding in *Buckley*—that under the federal separation of powers doctrine neither Congress nor congressional leaders may be granted the authority to appoint an executive officer—drew support from a number of prior United States Supreme Court decisions. (See, e.g., *Myers v. United States, supra,* 272 U.S. 52, 117 [the executive power granted the President by article II "included the appointment and removal of executive subordinates"]; *Springer v. Philippine Islands* (1928) 277 U.S. 189, 202 [72 L.Ed. 845, 48 S.Ct. 480] [invalidating Philippine statute that purported to grant executive authority to legislative appointees, observing that "[l]egislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement. The latter are executive functions"]; *Humphrey's Executor v. U.S.* (1935) 295 U.S. 602, 624–625 [79 L.Ed. 1611, 55 S.Ct. 869] [upholding legislative restrictions upon President's power to remove members of independent regulatory agencies, but recognizing that such executive officers were to be appointed by the President].) In addition, in the years following the high court's decision in *Buckley*, a number of United States Supreme Court decisions have reconfirmed that under federal separation of powers principles the appointment and removal of executive officers are considered executive functions that may not be vested in Congress as a whole or in individual members of Congress. (See, e.g., *Bowsher v. Synar* (1986) 478 U.S. 714 [92 L.Ed.2d 583, 106 S.Ct. 3181] [invaliding statutory provision that authorized the Controller General, an official subject to removal by Congress, to exercise an executive function]; *MWAA v. CAAN* (1991) 501 U.S. 252 [115 L.Ed.2d 236, 111 S.Ct. 2298] [invalidating statutory provision conferring upon a

board of review composed of nine members of Congress the authority to veto executive decisions of the Metropolitan Washington Airports Authority, an executive body].)

 Although these federal decisions establish that the provisions of the Coastal Act here at issue would be of doubtful validity if the Coastal Commission were a federal agency and the statutory provisions were to be judged under the federal separation of powers doctrine, the flaw in Marine Forests' reliance upon these federal decisions lies in the implicit assumption that the separation of powers doctrine embodied in the federal Constitution is equivalent to the separation of powers clause of the California Constitution. As we shall see, with respect to the exercise of the particular governmental function at issue in this case—the authority to appoint executive officers—the federal and California Constitutions are quite distinct, rendering inapposite the federal authorities upon which Marine Forests relies.

In the analysis that follows, we begin with a brief overview of several basic differences between the structure of the federal Constitution and that of most state constitutions—differences that explain why, as a general matter, separation of power decisions under the federal Constitution cannot be applied uncritically in resolving separation of powers questions that may arise under a state constitution. We then turn to the specific governmental function at issue in this case—the appointment of executive officers—and explain that although under the federal Constitution Congress is prohibited from appointing any federal executive officers, the California Constitution imposes no similar categorical constraint upon legislative appointment of state executive officers.

Thereafter, we proceed to explain that although the Legislature is not precluded by the state Constitution from providing for legislative appointment of executive officers, the state separation of powers clause imposes limits upon the Legislature's exercise of this authority, restraining the Legislature from overstepping its bounds by defeating or materially impairing the executive function. Finally, we examine in detail the current provisions of the California Coastal Act relating to the appointment and tenure of the Coastal Commission to determine whether such provisions violate the separation of powers clause of the California Constitution, concluding that these provisions do not violate this clause.

## V

In the introduction to a recent scholarly law review article entitled *Interpreting The Separation of Powers in State Constitutions*, Professor G. Alan Tarr observed: "To understand the separation of powers in the

American states, one must be willing to explore the nature of state constitutions, their historical development, and their underlying ideas, without preconceptions derived from familiarity with the separation of powers on the national level. . . . The most cursory examination of state constitutions confirms how distinctive state constitutions and governments are. The Federal Constitution restricts the federal government both by imposing prohibitions on the government and by granting the government only limited powers. Under state constitutions, by contrast, the second restriction is largely missing, and thus the states exercise plenary legislative power. . . . [¶] Put differently, despite the superficial similarities, state governments are not merely miniature versions of the national government . . . ." (Tarr, *Interpreting The Separation of Powers in State Constitutions* (2003) 59 N.Y.U. Ann. Surv. Am. L. 329, 329–330, fns. omitted (hereafter Tarr).)

As Professor Tarr goes on to explain, "both federal and state constitutions agree with Montesquieu in positing three branches of government—legislative, executive, and judicial—each invested with a different function. The institutions created at the national and state levels also have a surface similarity: state legislature and Congress, governor and president, state supreme court and U.S. Supreme Court. But when one proceeds below the surface, one finds that those apparently analogous structures of government and separation of powers quickly evaporate." (Tarr, *supra*, at p. 333, fns. omitted.) With regard to the federal Constitution, "[t]he major concern in 1787 was to introduce checks on the legislative branch which, as James Madison warned in Federalist No. 51, 'necessarily predominates' in republican governments." (*Ibid.*) On the other hand, "[m]ost early state constitutions reflected a quite different sensibility. Typically the separation of powers was not designed to balance power among the branches of government. Power tended to be concentrated in the legislature, in most instances the only branch whose members were directly elected by the people; to state constitution-makers this seemed altogether appropriate." (*Id.* at p. 334, fns. omitted.)

Of course, these cautionary admonitions do not mean that federal separation of powers decisions never provide helpful guidance in interpreting the California separation of powers clause. In the past, we have looked to federal decisions for assistance in interpreting our state constitutional separation of powers doctrine in instances in which there were no fundamental differences between the relevant constitutional provisions. (See, e.g., *Carmel Valley Fire Protection Dist. v. State of California, supra*, 25 Cal.4th 287, 298–308.) The appropriateness of such reliance, however, necessarily depends upon the nature of the particular separation of powers question that is at issue in a given case. The general teaching of the article quoted above is simply that in interpreting and applying a state constitutional separation of powers provision, a court must keep in mind potential structural differences between

the state and federal constitutions. As Professor Tarr observes, "[i]n interpreting state constitutions, one must . . . not assume that the definition of what is 'executive' or 'legislative' is the same at the state level as at the national level." (Tarr, *supra*, at p. 338.)

## VI

The separation of powers issue presented in this case concerns the authority to appoint a public official who performs an executive function. The Framers of the federal Constitution, in large part in reaction to the failures that occurred under the Articles of Confederation, opted to establish a strong, unitary executive officer—the President—with extensive executive authority. (See The Federalist Nos. 69, 70 (Alexander Hamilton).) One important feature of the decision to create a strong executive was the adoption of the federal appointments clause—article II, section 2, clause 2 of the United States Constitution[10]—which grants the President the exclusive appointment authority over high executive officials, and authorizes Congress, by statute, to vest the appointment of "inferior officers" "in the President alone, in the courts of law, or in the heads of departments," but pointedly does *not* authorize Congress *itself* to appoint *any* executive official. (See, e.g., *Buckley v. Valeo*, *supra*, 424 U.S. 1, 124–136.) In light of the language and history of the appointments clause, the United States Supreme Court has held that under the federal separation of powers doctrine, neither Congress as a whole, nor congressional leaders, may appoint a federal executive officer. (*Ibid.*)

The United States Supreme Court also has made clear, however, that the separation of powers doctrine embodied in the federal Constitution, which governs the allocation and exercise of governmental authority by the federal legislative, executive, and judicial branches, has no application to the states. As the high court observed in *Mayor of Philadelphia v. Educ. Equal. League* (1974) 415 U.S. 605, 615, footnote 13 [39 L.Ed.2d 630, 94 S.Ct. 1323]: "The [federal] Constitution does not impose on the States any particular plan for the distribution of governmental powers." (See also *Dreyer v. Illinois* (1902) 187 U.S. 71, 84 [47 L.Ed. 79, 23 S.Ct. 28].)

Accordingly, the separation of powers issue before us must be decided on the basis of the California Constitution.

---

[10] Article II, section 2, clause 2 of the United States Constitution provides: "[The President] . . . by and with the advice and consent of the Senate, shall appoint ambassadors, other public ministers and consuls, judges of the Supreme Court, and all other officers of the United States, whose appointments are not herein otherwise provided for, and which shall be established by law; but the Congress may by law vest the appointment of such inferior officers, as they think proper, in the President alone, in the courts of law, or in the heads of departments."

# VII

 Unlike the federal Constitution, the California Constitution—like many state constitutions—embodies a structure of divided executive power, providing for the statewide election of not only the Governor (and the Lieutenant Governor), but also of the Attorney General, the State Treasurer, the Secretary of State, the Controller, and the Superintendent of Public Instruction.[11] Furthermore, and perhaps most significantly, unlike the United States Congress, which possesses only those specific powers delegated to it by the federal Constitution, it is well established that the California Legislature possesses *plenary* legislative authority except as specifically limited by the California Constitution. (See, e.g., *Fitts v. Superior Court* (1936) 6 Cal.2d 230, 234 [57 P.2d 510] ["we do not look to [the California] Constitution to determine whether the [L]egislature is authorized to do an act, but only to see if it is prohibited. In other words, unless restrained by constitutional provision, the [L]egislature is vested with the whole of the legislative power of the state."]; *California Housing Finance Agency v. Patitucci* (1978) 22 Cal.3d 171, 175 [148 Cal.Rptr. 875, 583 P.2d 729] [same]; see also *People v. Tilton* (1869) 37 Cal. 614, 626 [". . . State Constitutions are not grants of power to the Legislature. Full power exists when there is no limitation"].)

In contrast to the federal Constitution, there is nothing in the California Constitution that grants the Governor (or any other executive official) the exclusive or paramount authority to appoint all executive officials or that prohibits the Legislature from exercising such authority. Moreover, as we shall see, the history of the California Constitution and past judicial decisions make it abundantly clear that under this state's Constitution the Legislature possesses authority not only to determine whether to create new executive offices, agencies, or commissions, but also to decide who is to appoint such executive officers and commissioners, including, at least as a general matter, the authority to provide for such appointment by the Legislature itself.

We begin with the relevant provisions of California's first Constitution—the Constitution of 1849.

## A

The 1849 Constitution contained two explicit provisions relating specifically to the appointment of executive officials.

---

[11] Provision for the statewide election of the Insurance Commissioner is statutory, rather than constitutional. (See Ins. Code, § 12900; cf. Cal. Const., art. V, §§ 2 (Governor), 11 (Lieutenant Governor, Attorney General, Controller, Secretary of State, and Treasurer); *id.*, art. IX, § 2 (Superintendent of Public Instruction).)

Article XI, section 6, of the 1849 Constitution provided: "All officers whose election or appointment is not provided for by this Constitution, and all officers whose offices may hereafter be created by law, shall be elected by the people, or appointed *as the Legislature may direct.*" (Italics added.)

Article V, section 8, of the 1849 Constitution provided: "When any office shall, from any cause become vacant, *and no mode is provided by the Constitution and laws for filling such vacancy,* the Governor shall have the power to fill such vacancy by granting a commission, which shall expire at the end of the next session of the Legislature, or at the next election by the people." (Italics added.)

Thus, the 1849 Constitution established that, except as otherwise provided by the Constitution, the Legislature possessed the constitutional authority to determine the method for appointing executive officers, and that the Governor possessed the authority to fill a vacancy in such offices only when no method for filling such vacancies had been provided by the Constitution or legislation—and then only on an interim basis.

By its terms, article XI, section 6 of the 1849 Constitution provided simply that public officers whose election or appointment was not specified by the Constitution "shall be elected by the people, or appointed as the Legislature shall direct," and did not explicitly address the question whether the provision contemplated that the Legislature could provide for the appointment of public officers by the Legislature itself.[12] Very shortly after the adoption of the Constitution, however, the Legislature made clear by its own contemporary interpretation that it was understood the constitutional provision authorized the Legislature, by legislative enactment, to provide for the appointment of state officers by the Legislature itself.

The second piece of legislation passed by California's first Legislature was a bill creating the Office of State Printer and providing that the State Printer would be elected by the Legislature. (Stats. 1850, ch. 2, p. 45.) Several months later, the Legislature created a four-member Board of Health for the Port of San Francisco, consisting of the Mayor of San Francisco and three additional members appointed by the Legislature. (Stats. 1850, ch. 64,

---

[12] The 1849 Constitution contained a provision prohibiting *any member of the Legislature,* during his or her legislative term, from being appointed to "any civil office of profit, under this State, which shall have been created . . . during such term, except such office as may be filled by election by the people " (Cal. Const. of 1849, art. IV, § 20), but contained no provision prohibiting the Legislature from appointing *nonlegislators* to such office. The current California Constitution contains an analogous but somewhat broader provision prohibiting a state legislator from holding any appointive state office during his or her term of office. (Cal. Const., art. IV, § 13 ["A member of the Legislature may not, during the term for which the member is elected, hold any office or employment under the State other than an elective office."].)

p. 162.) The following year, the Legislature created a State Hospital to be administered by an eight-member board, all of whom were appointed by the Legislature. (Stats. 1851, ch. 127, p. 500.)

Very early decisions of this court confirmed both the primacy of the Legislature's constitutional role in determining how and by whom executive officers should be appointed, and the very limited nature of the role that the state Constitution granted to the Governor with regard to this function. (See, e.g., *People v. Fitch* (1851) 1 Cal. 519, 536; *People v. Jewett* (1856) 6 Cal. 291, 293.) In *People v. Mizner* (1857) 7 Cal. 519, 524–525, this court, after reviewing the applicable state constitutional provisions quoted above, declared in this regard: "It would seem that the evident intent and whole spirit of the Constitution of the State *was to limit the patronage of the Executive within very narrow bounds.*" (Italics added; see also *People v. Tilton, supra,* 37 Cal. 614, 622 [" 'Our Constitution, whether wisely or unwisely, it is not our province to determine, has studiously restricted the patronage of the Governor.' "].)[13] Although the Constitution of 1849, like the Constitution today, included provisions specifying that "[t]he supreme executive power of this State shall be vested in . . . the Governor" and that "[the Governor] shall see that the laws are faithfully executed" (Const. of 1849, art. V, §§ 1, 7 [see now Cal. Const., art. V, § 1]), none of the numerous authorities cited above suggested that these provisions could be interpreted to grant the Governor a broad power to appoint executive officers in the absence of statutory authorization, in part because of the specific constitutional provision that expressly granted the Governor only a limited authority to fill vacancies in such offices. (Cal. Const. of 1849, art. V, § 8.)[14]

---

[13] As these early decisions noted, other provisions of the 1849 Constitution were consistent with this approach. This Constitution provided that all of the statewide constitutional officers would be selected by election by the people, but also provided that prior to the initial election, the Legislature would appoint the first Attorney General, Treasurer, Comptroller, and Surveyor General, as well as the first justices of the Supreme Court (*id.,* art. V, § 20; *id.,* art. VI, § 3); the Governor was given the authority to appoint, with the advice and consent of the Senate, only the first Secretary of State (*id.,* art. V, § 19).

[14] In *McCauley v. Brooks* (1860) 16 Cal. 11, 40, the court, in listing a number of important functions or duties as to which the Governor, as head of the executive branch, has broad discretion that generally is not subject to judicial review, noted in dictum that the Governor "can exercise his discretion in numerous appointments to office." Nothing in *McCauley,* however, indicates that the appointments to which this brief passage refers were other than appointments to the numerous offices that the Governor was authorized to fill either by virtue of the constitutional provision relating to vacancies, or the numerous then existing statutes providing for gubernatorial appointment. Unlike the cases discussed in text above, *McCauley* itself did not involve an issue relating to an appointment to office, but rather concerned the unrelated procedural question whether a writ of mandamus could be issued to compel the Controller to perform a ministerial act—in that case, the issuance of a warrant for a sum due from the state that was payable from available, appropriated funds. On this procedural point, the court in *McCauley* held that a writ of mandamus could issue to compel this type of ministerial act by an executive officer.

With regard to the separation of powers question before us today, the most directly relevant of the early California decisions is *People v. Langdon* (1857) 8 Cal. 1. In *Langdon*, a dispute arose with regard to who properly held the public office of superintendent of the state asylum for the insane—the person who had been appointed by the Governor to a vacancy in the position, or the person subsequently appointed by the Legislature. The governing statute provided that the superintendent was to be appointed for a two-year term by a vote of the Legislature on joint-ballot, but the Governor's appointee (who had been appointed to fill a vacancy) challenged the applicable statute as a violation of the state separation of powers clause, arguing that "[t]o create the office, prescribe the duration of the term, and to define the powers and duties of the office are clearly legislative functions, but to fill this office by an election in joint convention is not a legislative function. It is most clearly an invasion of the executive power of the State, or the rights of the people to elect." (8 Cal. at p. 4.)

Restating and responding to this argument, the court in *Langdon* observed: "The appellant contends that, under the third article [separation of powers] and the sixth section of the eleventh article of the Constitution [election or appointment of officers], the Legislature have no power to elect an incumbent to an office. The third article provides for the distribution of the powers of government between the executive, legislative, and judicial branches of government, and forbids those charged with duties belonging to one, from exercising functions appertaining to another department.[15] Under this provision, it is urged that the Legislature may create the office, but cannot elect the officer; that it would be exercising power belonging to the executive branch of the government, or to the people. Unhappily for the argument, there is no fourth branch of the government recognized by the third article of the Constitution, which is represented by the people, and if there is any encroachment upon any other department, it must be upon the Executive." (*People v. Langdon, supra*, 8 Cal. 1, 15–16.)

The court in *Langdon* then explained: "The power to fill an office is political, and this power is exercised in common by the Legislatures, the Governors, and other executive officers, of every State in the Union, unless it has been expressly withdrawn, by the organic law of the State. That it has not been by our Constitution, there can be no doubt: First, because there is no

---

[15] The language of the separation of powers provision of the 1849 Constitution was similar to the current provision, and read in full: "The Powers of the Government of the State of California shall be divided into three departments: the Legislative, the Executive, and Judicial; and no person charged with the exercise of powers belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases hereinafter expressly directed or permitted." (Cal. Const. of 1849, art. III.)

clause that would warrant such a construction: and, Second, because there are several that would forbid it." (*People v. Langdon, supra,* 8 Cal. 1, 16.)

After reviewing the language of article XI, section 6 of the 1849 Constitution—that all officers whose election or appointment is not provided by the Constitution "shall be elected by the people, or appointed, *as the Legislature may direct*" (italics added)—and rejecting as specious the claim that the use of the term "appointed" prohibited the Legislature from providing for the selection of an officer through "election" by the members of the Legislature (rather than by "appointment" by the Legislature), the court in *Langdon* declared emphatically: "It would be useless to pursue this argument further; *this power has been always exercised by the Legislature, and never before denied. It is not prohibited by the Constitution, and according to the theory and spirit of our institutions, is safer when exercised by the immediate representatives of the people, than when lodged in the hands of the Executive.*" (*People v. Langdon, supra,* 8 Cal.1, 16, italics added.)

Subsequent cases decided under the 1849 Constitution reiterated the principles set forth in the early cases, confirming the Legislature's broad authority over the appointment of executive officers, including the power to authorize the appointment of such officers by the Legislature itself. (See, e.g., *Wetherbee v. Cazneau* (1862) 20 Cal. 503, 508; *People v. Tilton, supra,* 37 Cal. 614, 621–623; *In re Bulger* (1873) 45 Cal. 553, 559.)[16]

In 1872, as part of the adoption of the initial Political Code, the Legislature enacted a general statute providing that, in the absence of a specific statute prescribing the appointing authority for a particular office, the officer would be appointed by the Governor. (Pol. Code of 1872, § 875 ["Every officer, the mode of whose appointment is not prescribed by the Constitution or statutes, must be appointed by the Governor"].) This provision—whose terms are now embodied in nearly identical language in Government Code section 1300[17]— recognizes that the Legislature retains the authority to determine the mode of

---

[16] The 1849 Constitution of California was hardly alone in recognizing the Legislature's authority to appoint executive officers. In The Federalist No. 47, James Madison reviewed the structure of a number of the state constitutions that were in existence at the time of the drafting of the federal Constitution in 1787, and noted that the constitutions of at least seven of the original colonies (New Hampshire, Massachusetts, New York, Delaware, Virginia, South Carolina, and Georgia) provided for the appointment of at least some executive officers by the legislature itself, including, in a number of instances, the state governor. (The Federalist No. 47, at pp. 303–307 (James Madison) (Clinton Rossiter ed. 1961).) Although Madison objected to the legislative appointment of executive officers and was instrumental in persuading the drafters of the federal Constitution to incorporate a different structure into the federal Constitution, the drafters of the 1849 Constitution of California opted, in this instance, to model the relevant provisions of the California Constitution on the earlier state models.

[17] Government Code section 1300 provides: "Every officer, the mode of whose appointment is not prescribed by law, shall be appointed by the Governor."

appointment of state officers by the enactment of an applicable statute, but in the absence of such an enactment the Governor is statutorily empowered to appoint the officer.

## B

Thirty years after the adoption of the 1849 Constitution, a constitutional convention was convened in California to draft a new Constitution.

During the 1878–1879 Constitutional Convention, two delegates proposed the adoption of revised constitutional provisions that would have conferred upon the Governor the general authority to appoint state executive officers and would have prohibited the Legislature itself from appointing such officers. (See 1 Willis & Stockton, Debates and Proceedings, Cal. Const. Convention 1878–1879, p. 147 [amendment proposed by Mr. White: "The Governor shall nominate, and by and with the advice and consent of the Senate . . . appoint all officers whose offices . . . may be created by law, and whose appointment or election is not otherwise provided for; *and no such officer shall be appointed or elected by the Legislature, or by any legislative enactment.*" (Italics added.)]; *id.* at p. 177 [amendment proposed by Mr. Dudley: "All officers whose election or appointment is not provided for by this Constitution, and all officers whose offices may hereafter be created by law, shall be elected by the people, or appointed, as the Legislature may direct. All appointed officers of the State Government must be appointed by the Governor [with specified exceptions] . . . . *No office shall be filled by appointment of the Legislature, or either branch thereof, save the offices of its own body.*" (Italics added.)].) Neither of the proposed revisions, however, was adopted by the convention, and instead the convention adopted constitutional provisions that, in all relevant respects, paralleled the earlier provisions of the 1849 Constitution.[18]

Ten years after the adoption of the 1879 Constitution, a separation of powers claim similar to that before us today came before this court in *People v. Freeman* (1889) 80 Cal. 233 [22 P. 173]. *Freeman* was an action instituted by the Governor, seeking to oust a member of the state library board of trustees on the ground that the applicable statutory provision that

---

[18] The subject formerly set forth in article XI, section 6 of the 1849 Constitution was moved to article XX, section 4 of the 1879 Constitution, which provided in full: "All officers or Commissioners whose election or appointment is not provided by this Constitution, and all officers or Commissioners whose offices or duties may hereafter be created by law, shall be elected by the people, or appointed, as the Legislature may direct."

The provision relating to the Governor's limited power to fill vacancies, formerly set forth in article V, section 8 of the 1849 Constitution, was continued as article V, section 8 of the 1879 Constitution.

granted the Legislature the power to appoint (for a four-year term) all five members of the library board was unconstitutional under the separation of powers doctrine. In *Freeman*, the Governor contended that "appointing to office is intrinsically, essentially, and exclusively an executive function, and therefore cannot be exercised by the legislature." (80 Cal. at p. 234.) In support of this claim, the Governor relied upon statements in a few out-of-state decisions and upon a passage from a letter written by Thomas Jefferson, in which Jefferson expressed the view that " '[n]omination to office is an executive function' " and that " 'to give it to the legislature . . . is a violation of the principle of the separation of powers . . . .' " (*Id.* at p. 235.)

In *People v. Freeman, supra*, 80 Cal. 233, this court, in a unanimous opinion by Chief Justice Beatty, rejected the Governor's contention, explaining: "No doubt these views as to the intrinsic nature of the power of appointment or of nomination to office, and the expediency of confining it to the executive department of the government, are entitled to the highest consideration, but the question here is, not what the constitution ought to be, but what it is, or in other words, what was the intention of its framers as to this particular matter. Of course if there had been at the time of its adoption a general consensus of opinion in harmony with the views of Mr. Jefferson, as above quoted, we should be forced to conclude that its framers intended to forbid to the legislature the exercise of this power of appointment to office. But there was no such consensus of opinion. On the contrary, it had not only been decided in other states of the Union, under constitutions containing provisions substantially equivalent to the sections above quoted from our own, that the legislature could fill offices by itself created, but our own supreme court, construing identical provisions of our old constitution, had come to the same conclusion. (*People v. Langdon*, 8 Cal. 16.) In view of this construction, so long acquiesced in and acted upon, it must be held that the convention of 1879 in readopting the provisions so construed, in the identical terms of the old constitution, intended that they should have the same operation and effect formerly attributed to them. If they had meant to prescribe a different rule, it would have been easy to express such intention in language not to be misunderstood, and leaving nothing to construction. [¶] Upon these considerations, we feel constrained to hold that the power of appointment to office, so far as it is not regulated by express provisions of the constitution, may be regulated by law, and if the law so prescribes, may be exercised by the members of the legislature." (*Id.*, at pp. 235–236.)[19]

Accordingly, the decision in *Freeman* reconfirmed that under the California Constitution of 1879, as under the Constitution of 1849, the appointment of

---

[19] Contrary to the assertion of counsel for Marine Forests at oral argument, nothing in the opinion in *Freeman* characterizes the library board at issue in that case as a legislative rather than an executive agency.

executive officers was not an exclusively executive function and that a statute providing for legislative appointment of such officers did not violate the separation of powers provision of the California Constitution. (See also *Ex Parte Gerino* (1904) 143 Cal. 412, 414 [77 P. 166] ["[T]he legislature [has] power to declare the manner in which officers other than those provided by the constitution shall be chosen. Such officers may be appointed by the legislature itself, or the duty of appointment may be delegated and imposed upon some other person or body"].)

## C

In 1934, the California Constitution was amended to adopt a new article creating a state civil service system that covered the great bulk of state employees and provided for appointment and promotion of such employees on the basis of competitive examination. (Cal. Const., former art. XXIV, now Cal. Const., art. VII.) Members of boards and commissions—such as the members of the Coastal Commission—however, always have been exempt from the civil service system (Cal. Const., former art. XXIV, § 4, subds. (a), (d), now Cal. Const., art. VII, § 4, subd. (d)), and thus the adoption of the civil service article did not affect the constitutional provisions regarding the appointment of such high state officials.

As a result of the passage of a great variety of initiative measures and legislatively initiated constitutional provisions during the first six decades of the 20th century, the California Constitution had become a very long and prolix document by the 1960's, and the California Constitution Revision Commission was appointed to undertake a comprehensive review of the California Constitution and propose appropriate revisions. (See Grodin et al., The Cal. State Constitution: A Reference Guide (1993) p. 19.) Upon the recommendations of the California Constitution Revision Commission, the constitutional provision specifically relating to the appointment of executive officers was removed from the Constitution in 1970, but, as we shall see, the historical materials accompanying this change make it clear that this change was not intended to, and did not in fact, alter the state constitutional allocation of power with regard to the appointment of executive officers, such as the members of boards and commissions.

Former article XX, section 4—the provision of the 1879 Constitution relating to the appointment of executive officers (see, *ante*, at p. 36, fn. 18)—was one of a number of constitutional provisions that were repealed by a partial constitutional revision passed at the November 1970 general election. The ballot pamphlet distributed to voters explained that the purpose of the proposed deletions was to place "the subject matter of the deleted provisions . . . under *legislative* control through the enactment of statutes."

(Ballot Pamp., Gen. Elec. (Nov. 3, 1970) analysis of Prop. 16 by Legis. Counsel, p. 2, italics added.) Further, the report of the California Constitution Revision Commission that proposed the deletion of this provision from the Constitution explained: "The provision apparently was intended during the early days of statehood to confirm the power of the Legislature to establish departments and agencies other than those specifically created by the Constitution. Since there is nothing elsewhere in the Constitution restricting the now accepted inherent power of the Legislature to establish new offices, agencies, and departments, this provision is constitutionally unnecessary." (Cal. Const. Revision Com., Proposed Revision (1970) p. 36.) At the time of the repeal of former article XX, section 4, Government Code section 1300 provided, as it does today, that "[e]very officer, the mode of whose appointment is not prescribed *by law*, shall be appointed by the Governor." (Italics added.) Accordingly, the repeal did not affect the Legislature's primary authority to determine the mode of appointment of executive officers through legislation. Nothing in the constitutional change suggests any intent to withdraw constitutional authority from the Legislature or to grant additional constitutional authority to the Governor or any other official in the executive branch.

The other relevant constitutional provision of the 1879 Constitution— article VIII, section 5, relating to the Governor's authority to fill vacancies— was moved to article V, section 5, subdivision (a) as part of an earlier 1966 constitutional revision. The latter provision now reads: *"Unless the law otherwise provides*, the Governor may fill a vacancy in office by appointment until a successor qualifies." (Italics added.) By its terms, it is clear that this revision also did not withdraw any constitutional authority from the Legislature.

A brief filed by one of the many amici curiae in this matter argues that the early California separation of powers decisions that we have discussed above should be viewed as no longer applicable because of the change in the California Constitution in 1970. The brief contends that when the provision expressly recognizing the Legislature's authority over the appointment of executive officers was deleted from the Constitution, "the power became merely statutory, as its constitutional basis no longer exists."

This argument reflects a fundamental misunderstanding of state constitutional principles. As already noted, California decisions long have made it clear that under our Constitution the Legislature enjoys plenary legislative powers unless there is an explicit prohibition of legislative action in the Constitution itself. (See, e.g., *Fitts v. Superior Court, supra*, 6 Cal.2d 230, 234.) As we have seen, when the express constitutional provision relating to appointment of officers was removed from the California Constitution as part of the constitutional revision process in the early 1970's, the rationale for the

deletion was that there was no need to retain the provision in the Constitution in view of the Legislature's plenary legislative authority on this subject and the firmly established nature of its prerogative in this area. Thus, amicus curiae is in error in suggesting that the constitutional change in 1970 should be interpreted as having altered the allocation of authority between the legislative and executive branches with respect to the appointment of executive officers.

## VIII

As the foregoing discussion reveals, from the inception of the California Constitution in 1849 it has been uniformly recognized that under our state's Constitution the appointment of executive officers is not an exclusively executive function that may be exercised only by members of the executive branch, and that the Legislature possesses the power to determine through legislative enactment by whom an executive officer should be appointed, including the authority to provide for the appointment of executive officers by the Legislature itself. Unlike the structure prescribed by the federal Constitution, under the California Constitution the general power to appoint executive officers never has been viewed as an inherent or exclusive power of the executive branch.

Contrary to the contention of Marine Forests, the case of *Parker v. Riley* (1941) 18 Cal.2d 83 [113 P.2d 873] is in no way inconsistent with this conclusion. In *Parker*, this court addressed a two-pronged constitutional challenge to a statute that created a Commission on Interstate Cooperation, a body "charged with the duty of furthering the participation of the state as a member of the Council of State Governments" and with "confer[ring] with officials of other states and the federal government to formulate proposals for cooperation between the state and such other governments." (*Id.* at p. 84.) The statute established a five-member Senate Committee on Interstate Cooperation and a five-member Assembly Committee on Interstate Cooperation, whose members were to be chosen in the same manner as other legislative committees, and further provided that the membership of the overall state Commission on Interstate Cooperation was to be made up of the five members of the Senate Committee, the five members of the Assembly Committee, and five officials of the state to be appointed by the Governor.

In *Parker v. Riley, supra*, 18 Cal.2d 83, this statute was challenged as violative of two distinct provisions of the California Constitution. First, the court in *Parker* observed that "[t]he most serious challenge to the constitutionality of this legislation is advanced under section 19 of article IV of the California Constitution" (*id.* at p. 86), which declared that " '[n]o senator or member of the assembly shall, during the term for which he shall have been

elected, hold or accept any office, trust or employment under this state; provided, that this provision shall not apply to any office filled by election by the people.' " (*Ibid.*)[20] The challengers claimed that membership in the Commission constituted an "office, trust, or employment" within the meaning of this constitutional provision and thus that persons serving in the Legislature could not hold such a position. The court in *Parker* acknowledged that "[t]he sweeping terms of the California constitutional provision . . . prevent the appointment of a member of the legislature to any other position of trust or responsibility under the state" (*Parker v. Riley, supra,* at p. 87), but went on to conclude that membership on the commission did not confer any "*other* office, trust, or employment" (*id.* at p. 88) upon the legislative members because the members' participation in the commission was in effect an extension of the members' legislative duties of investigating legislative facts and proposing legislative solutions. On this point, the court concluded: "We hold, therefore, that the statute here attacked did not contemplate the conferring of any new office, trust, or employment upon the legislative members of this commission." (*Ibid.*)

After reaching the above conclusion, the court in *Parker* stated: "It must not be assumed, however, that legislative activities may be expanded indefinitely through the creation of separate agencies responsible primarily to the [L]egislature. . . . The Constitution forbids any such assumption of duties by the legislative branch of government, and a statute conferring a nonlegislative office or trust *upon members of the legislature* would clearly be unconstitutional." (*Parker v. Riley, supra,* 18 Cal.2d 83, 88, italics added.) Although Marine Forests relies upon the initial sentence of the immediately preceding quotation ("[i]t must not be assumed . . . that legislative activities may be expanded indefinitely") to support its separation of powers contention, in context it is clear that this statement in *Parker* referred only to the limits placed by the state Constitution *upon members of the Legislature* holding or accepting an appointment to another state office, and was not directed at the broad authority of the Legislature to appoint persons who do not hold legislative office to an executive branch office or agency.

In *Parker v. Riley, supra,* 18 Cal.2d 83, in addition to the foregoing constitutional challenge based upon the state constitutional provision limiting a member of the Legislature from holding another state office during his or her legislative term of office, the statute in question also was challenged as a violation of the state separation of powers clause. In both respects, however, the *Parker* decision provides no support for Marine Forests' position. The separation of powers challenge in *Parker* was premised on the theory that certain duties performed by the Commission were executive in nature, and

---

[20] As noted above (*ante,* at p. 32, fn. 12), a similar provision now is set forth in article IV, section 13, of the California Constitution.

that the exercise of such powers by members of the legislative branch of government was impermissible under the separation of powers doctrine. The court in *Parker* rejected that claim, explaining that "[t]he doctrine has not been interpreted as requiring the rigid classification of all the incidental activities of government, with the result that once a technique or method of procedure is associated with a particular branch of the government, it can never be used thereafter by another." (*Id.* at p. 90.) In sum, nothing in *Parker* casts any doubt on the Legislature's well-established authority under the California Constitution to enact legislation authorizing the Legislature's appointment of members of an executive branch entity or agency.

## IX

Although the resolution of the issue before us turns solely on the allocation of governmental authority established by the California Constitution, we note that, as in California, in the great majority of our sister states in which the question has been presented, the courts have held that under their respective state constitutions the power to appoint executive officers is not an exclusively executive function that may be exercised only by the Governor or another executive official, but rather is a power that may be exercised—either in general or in appropriate circumstances—by the Legislature. (See, e.g., *Fox v. McDonald* (1893) 101 Ala. 51 [13 So. 416, 420–421]; *State ex rel. Woods v. Block* (1997) 189 Ariz. 269 [942 P.2d 428, 434–435]; *Cox v. State* (1904) 72 Ark. 94 [78 S.W. 756, 756–758]; *Seymour v. Elections Enforcement Com'n* (2000) 255 Conn. 78 [762 A.2d 880, 895–897]; *State ex rel. Craven* (1957) 50 Del. 365 [131 A.2d 158, 162–164]; *Caldwell v. Bateman* (1984) 252 Ga. 144 [312 S.E.2d 320, 325]; *Ingard v. Barker* (1915) 27 Idaho 124 [147 P. 293, 295]; *Betts v. Calumet Park* (1960) 20 Ill.2d 524 [170 N.E.2d 563, 563–564]; *Sedlak v. Dick* (1995) 256 Kan. 779 [887 P.2d 1119, 1126–1130]; *State Through Bd. of Ethics v. Green* (La. 1990) 566 So.2d 623, 624–626; *Buchholtz v. Hill* (1940) 178 Md. 280 [13 A.2d 348, 351–352]; *Oren v. Bolger* (1901) 128 Mich. 355 [87 N.W. 366, 367–368]; *Daley v. City of St. Paul* (1862) 7 Minn. 311, 314 [7 Grif. 238]; *People v. Woodruff* (1865) 32 N.Y. 355, 364–365 [29 How.Pr. 203]; *State of Nevada v. Rosenstock* (1876) 11 Nev. 128, 134–139; *State ex rel. Martin v. Melott* (1987) 320 N.C. 518 [359 S.E.2d 783, 785–787]; *State v. Frazier* (1921) 47 N.D. 314 [182 N.W. 545, 548]; *Wentz v. Thomas* (1932) 159 Okla. 124 [15 P.2d 65, 68–69]; *Biggs v. McBride* (1889) 17 Ore. 640 [21 P. 878, 880–881]; *Pa. State Ass'n of Tp. Sup'rs v. Thornburgh* (1979) 45 Pa.Commw. 361 [405 A.2d 614, 616]; *In re Advisory Opinion to the Governor* (R.I. 1999) 732 A.2d 55, 62–72; *Tucker v. Dept. of Highways* (1994) 314 S.C. 131 [442 S.E.2d 171, 172–173]; *Richardson v. Young* (1910) 122 Tenn. 471 [125 S.W. 664, 667–675]; *Brumby v. Boyd* (1902) 28 Tex.Civ.App. 164 [66 S.W. 874, 876–877]; *In re Appointment of Revisor* (1910) 141 Wis. 592 [124 N.W. 670, 678].)

Of the minority of state cases that reach a contrary conclusion, some (albeit not all) are based upon language in a particular state constitution that explicitly grants the governor a broad right to appoint executive officers or that explicitly prohibits the legislature from making such appointments. (See *Bradner v. Hammond* (Alaska 1976) 553 P.2d 1, 3–8 [specific constitutional language]; *State v. Daniel* (1924) 87 Fla. 270 [99 So. 804, 808] [same]; *Tucker v. State* (1941) 218 Ind. 614 [35 N.E.2d 270, 278–304]; *Legislative Research Com. v. Brown* (Ky. 1984) 664 S.W.2d 907, 920–924; *Opinion of the Justices* (1974) 365 Mass. 639 [309 N.E.2d 476, 479–480]; *Alexander v. State by and through Allain* (Miss. 1983) 441 So.2d 1329, 1343–1345; *State v. Washburn* (1902) 167 Mo. 680 [67 S.W. 592, 594–596]; *State v. Young* (1951) 154 Neb. 588 [48 N.W.2d 677, 679–681]; *Richman v. Ligham* (1956) 22 N.J. 40 [123 A.2d 372, 377–378] [specific constitutional language]; *State ex rel. Attorney General v. Kennon* (1857) 7 OhioSt. 546, 555–567 [same].)[21]

## X

■ As demonstrated by the constitutional history and judicial decisions reviewed above, it is clear that the separation of powers clause of the California Constitution does not preclude *all* legislative enactments that authorize the Legislature itself to appoint an executive officer. Contrary to the assertion of the Attorney General, however, it does not follow that the California separation of powers clause places *no* limits on such legislation. Although the California decisions in *People v. Freeman, supra,* 80 Cal. 233, and *People v. Langdon, supra,* 8 Cal. 1, discussed above, rejected the broad claim advanced in each of those cases that under the California Constitution the appointment of an executive officer is an exclusively executive function and thus that the state constitutional separation of powers clause categorically precludes the Legislature from appointing such an officer, in neither case was the court called upon to address the narrower question whether there are nonetheless some circumstances in which legislative appointment of an executive officer may violate the separation of powers clause.

As past California decisions demonstrate, the circumstance that the California Constitution permits a particular governmental function (such as the appointment of an executive officer) to be exercised by a particular branch (here, the legislative branch) does not establish that the separation of powers

---

[21] An extensive discussion and analysis of the early state authorities on this subject is set forth in a Comment on this court's decision in *People v. Freeman, supra,* 80 Cal. 233, appearing at 13 American State Reports 122, 125–147. Many of the more recent decisions are discussed in Devlin, *Toward a State Constitutional Analysis of Allocation of Powers: Legislators and Legislative Appointees Performing Administrative Functions* (1993) 66 Temp. L.Rev. 1205, 1242–1250.

clause places no limits on the exercise of that function by that branch (or by an entity within that branch). For example, although under the California Constitution the Legislature possesses the general authority to appropriate funds and designate the purpose for which such funds may and may not be expended, in *Mandel v. Myers* (1981) 29 Cal.3d 531, 547–550 [174 Cal.Rptr. 841, 629 P.2d 935], we held that in exercising its appropriation authority, the Legislature may not undertake to readjudicate final judicial judgments on a case-by-case basis or limit the expenditure of appropriated funds to satisfy only those final judicial judgments with which the Legislature (or a legislative committee) agrees. We concluded in *Mandel* that such a use of the appropriation power improperly interferes with the judicial function and constitutes an improper exercise of judicial authority by the Legislature. Similarly, in *County of Mendocino, supra,* 13 Cal.4th 45, 58–59, we concluded that although the Legislature possesses constitutional authority to declare and designate legal holidays on which courts will be closed, the Legislature's exercise of such authority would violate the separation of powers clause of the California Constitution were the Legislature to exercise such authority in a manner that would " 'defeat' or 'materially impair' a court's exercise of its constitutional power or the fulfillment of its constitutional function." (See also *Obrien v. Jones* (2000) 23 Cal.4th 40, 44 [96 Cal.Rptr.2d 205, 999 P.2d 95] [holding that in light of numerous structural and procedural safeguards, legislation providing that some of the judges of the State Bar Court shall be appointed by the executive and legislative branches "does not defeat or materially impair [the Supreme Court's] authority over the practice of law, and thus does not violate the separation of powers provision"]; *Brydonjack v. State Bar* (1929) 208 Cal. 439, 444 [281 P. 1018] ["the legislature may put reasonable restrictions upon constitutional functions of the courts provided they do not defeat or materially impair the exercise of those functions"].)

In the present case, Marine Forests contends that even if the California separation of powers clause does not categorically preclude the Legislature from appointing executive officers, the current Coastal Act provisions nonetheless are unconstitutional because these provisions—by authorizing the Legislature to appoint a majority of the voting members of the Commission and permitting the legislative appointees to be reappointed to successive terms—constitute an impermissible legislative usurpation of the functions of the executive branch. Invoking the language of the past California separation of powers decisions noted above, Marine Forests contends that the challenged statutes operate to "defeat or materially impair" the executive branch's exercise of its constitutional functions in two distinct respects: (1) by

improperly impinging upon the authority granted by the California Constitution to the Governor (or to other constitutionally prescribed executive officers), and (2) by compromising the ability of the Coastal Commission itself to exercise its own executive duties and functions without undue interference by the Legislature.

 We agree that, consistent with the governing California case law, the appropriate standard by which the statutory provisions in question are to be evaluated for purposes of the state constitutional separation of powers clause is whether these provisions, viewed from a realistic and practical perspective, operate to defeat or materially impair the executive branch's exercise of its constitutional functions. We also agree that in applying this standard, it is appropriate to consider whether the statutes either (1) improperly intrude upon a core zone of executive authority, impermissibly impeding the Governor (or another constitutionally prescribed executive officer) in the exercise of his or her executive authority or functions, or (2) retain undue legislative control over a legislative appointee's executive actions, compromising the ability of the legislative appointees to the Coastal Commission (or of the Coastal Commission as a whole) to perform their executive functions independently, without legislative coercion or interference. As we shall explain, however, we conclude, contrary to Marine Forests' claims, that the current provisions of the Coastal Act do not violate the separation of powers clause in either of these respects.[22]

### A

 For a number of reasons, we believe that it is quite clear that the legislative appointment of executive officers authorized by the statutory

---

[22] Courts in a number of other states—whose constitutions, like California's, do not preclude the legislative appointment of executive officers—have formulated a variety of standards for evaluating whether a particular statutory scheme embodying the legislative appointment of an executive officer violates the separation of powers clause contained in the state's constitution. (See, e.g., *State ex rel. Woods v. Block, supra*, 942 P.2d 428, 435 [Ariz.] ["the court must evaluate whether the Legislature, through its appointments, has maintained control over an executive agency in violation of separation of powers"]; *Seymour v. Elections Enforcement Com'n, supra*, 762 A.2d 880, 896 [Conn.] [inquiring whether the "legislative appointment . . . significantly interferes with the essential functions of the executive branch"]; *Sedlak v. Dick, supra*, 887 P.2d 1119, 1126–1130 [Kan.] [looking to " 'the nature of the power being exercised,' " " 'the degree of control by the legislative over the executive branch,' " "the objective of the legislature," and " 'the practical result' "]; *State Through Bd. of Ethics v. Green, supra*, 566 So.2d 623, 624–626 [La.] [no separation of powers violation "as long as (1) the appointment of the members by the Legislature was constitutionally valid and (2) the appointees are not subject to such significant legislative control that the Legislature can be deemed to be performing executive functions through its control of the members of the board in the executive branch"].) Although the wording of the standards set forth in these decisions varies, most of the cases consider the same range of factors that we discuss below.

scheme under consideration does not impermissibly intrude or infringe upon what might be characterized as the "core zone" of the Governor's (or any other constitutionally prescribed executive officer's) executive functions.

First, the members of the Coastal Commission are not intimate advisors of the Governor or of any other constitutionally prescribed executive officer but rather are members of a commission of an independent administrative agency. Unlike the selection of a confidential aide whose function is to assist the Governor or other executive official in carrying out the official's constitutionally prescribed duties, legislative appointment of a member of such a commission cannot reasonably be found to impinge upon an exclusively executive prerogative. (Cf., e.g., *Obrien v. Jones, supra*, 23 Cal.4th 40, 53 [citing cases restricting the authority of another branch to appoint "assistants upon whom the court relies in exercising judicial functions"]; *County of Mendocino, supra*, 13 Cal.4th 45, 65 [same]; accord, *Barland v. Eau Claire County* (1998) 216 Wis.2d 560 [575 N.W.2d 691, 703] [holding that removal of judicial assistant falls within "the judiciary's core zone of exclusive authority"].) Indeed, the executive positions here at issue are analogous to those at issue in *People v. Freeman, supra*, 80 Cal. 233, which, as noted, upheld a statute providing for the legislative appointment of commissioners of the state library board.

Second, as discussed above, the Coastal Commission is charged with a broad variety of functions, including both quasi-legislative and quasi-judicial functions as well as more traditional executive functions. (Cf. *Obrien v. Jones, supra*, 23 Cal.4th 40, 69 (dis. opn. of Kennard, J.) [indicating that in evaluating the propriety of an "interbranch appointment," one appropriate consideration is whether the appointee's duties are "not purely executive or judicial or legislative, but of a combined or hybrid sort"]; accord, *Seymour v. Elections Enforcement Com'n, supra*, 762 A.2d 880, 897 [noting, in rejecting separation of powers challenge to legislative appointment of members of an election commission, that "commission members participate in activities traditionally thought of as judicial, legislative and, of course, executive"].) Thus, the Coastal Commission is quite distinct from the ordinary executive departments of state government, whose heads and policymaking officials traditionally have been appointed by the Governor. (See, e.g., Gov. Code, § 12801 ["Each secretary [of specified state agencies] shall be appointed by, and hold office at the pleasure of, the Governor"].)

Third, the subject matter over which the Commission has been granted authority—land use planning within the coastal zone—is not a matter that the California Constitution assigns to the Governor or to any other constitutional executive officer, or even that, prior to the enactment of the Coastal Act, traditionally had been overseen by the state executive branch.

Instead, the general subject matter of land use planning is one that traditionally has fallen within the domain of local governmental entities. Accordingly, the subject matter with which the Commission deals provides no basis for suggesting that legislative appointment of members of the Coastal Commission impinges upon a core zone of executive branch authority for purposes of the state constitutional separation of powers clause.[23]

Finally, although Marine Forests contends that the challenged provisions conflict with the Constitution's vesting of the "supreme executive power" of the state in the Governor and its directive that the "Governor shall see that the law is faithfully executed" (Cal. Const., art. V, § 1), as we already have explained those constitutional provisions—which have been part of the California Constitution since 1849 (see, *ante*, at pp. 32–33)—never have been viewed as granting the Governor the constitutional authority to appoint all executive officers or as conflicting with and invalidating any statutory provision that grants the Legislature the power to appoint an executive officer. (Accord, *Buchholtz v. Hill, supra,* 13 A.2d 348, 351–352; *Biggs v. McBride, supra,* 21 P. 878, 880–881.) We have no occasion in the present case to determine the appropriate relationship between the Governor's authority to

---

[23] We note that in this respect, the statutory provisions here at issue are fundamentally different from those involved in *Obrien v. Jones, supra,* 23 Cal.4th 40 (*Obrien*), a decision heavily relied upon by Marine Forests. In *Obrien,* we addressed the question whether a statutory provision that authorized the Governor, the Senate Rules Committee, and the Speaker of the Assembly each to appoint one of the five judges of the State Bar Court Hearing Department, with the remaining two State Bar Court Hearing Department judges to be appointed by this court, violated the separation of powers clause of the California Constitution. In analyzing that issue in *Obrien,* we noted at the outset that the subject matter encompassed within the duties of the appointees—the disciplining of licensed attorneys—"is an expressly reserved, primary, and inherent power *of this court*" (that is, the California Supreme Court). (*Obrien, supra,* 23 Cal.4th at p. 48, italics added.) By contrast, regulation of development on the California coast is not a function that historically has been exercised by either the Governor or any other constitutionally designated executive officer.

*Obrien* is distinguishable from the present case on other substantial grounds as well. Unlike the constitutional history and decisions reviewed above that confirm the general validity under the California Constitution of legislative appointment of *executive* officials, no similar constitutional history or judicial precedents were cited in *Obrien* that indicated the Legislature possesses any comparable general authority to appoint *judicial* officers. On the contrary, past cases had indicated that the appointment of subordinate judicial officers is a judicial function. (See *Obrien, supra,* 23 Cal.4th 40, 53, and cases cited.)

Nonetheless, in *Obrien* our court, after considering a variety of features within the statutory scheme that minimized the potential for conflict, concluded that although the Supreme Court's "inherent, primary authority over the practice of law extends to determining the composition of the State Bar Court and appointing State Bar Court judges[,] . . . this authority is not defeated or materially impaired" by the legislation at issue in that case. (*Obrien, supra,* 23 Cal.4th 40, 57.) Accordingly, neither the holding nor the analysis in *Obrien* conflicts with our conclusion that the current provisions governing the appointment and tenure of the members of the Coastal Commission do not violate the separation of powers clause of the California Constitution.

"see that the law is faithfully executed" and the Coastal Commission's authority to perform its statutorily prescribed functions, because whatever the nature of that relationship may be, the balance of power between the Governor and the Commission does not depend upon the identity of the persons or entities who are statutorily authorized to appoint the individual members of the Commission. The California cases reviewed above clearly demonstrate that the Governor has no inherent or exclusive constitutional authority to appoint the members of such a commission, and that a statute does not violate the provisions of article V, section 1, or the separation of powers clause of the California Constitution simply because the statutory provision specifies that the appointment of an executive officer is to be made by someone other than the Governor.

**B**

We also conclude that the current provisions of the Coastal Act do not improperly compromise the ability of the members of the Coastal Commission individually, or the Coastal Commission as a whole, to perform the Commission's functions independently and without undue or improper control by the legislative branch.

**1**

With regard to the individual members who are appointed by either the Senate Rules Committee or the Speaker of the Assembly, Marine Forests contends initially that because each voting member of the Commission exercises executive functions, the circumstance that the statutes authorize an appointing authority within the legislative branch to appoint as a voting member of the Commission a person who shares the same "philosophy and politics" as the legislative appointing authority itself violates the separation of powers clause. *The authority to appoint a person to an executive office, however, is not the constitutional equivalent of the authority to exercise the executive functions of that office.* The California decisions reviewed above that have upheld the validity of legislative appointment of executive officers directly refute the claim that the separation of powers clause of the California Constitution is violated whenever the Legislature or a legislative entity selects the person who it determines is best qualified to exercise the particular executive function in question.

Marine Forests further contends that even if a legislative entity's power *initially* to appoint an executive officer does not violate the separation of powers clause, the current Coastal Act provisions are invalid because they permit the Senate Rules Committee and the Speaker of the Assembly to *reappoint* a current member to a new term after the member's completion of

his or her current term. Marine Forests acknowledges that the current provisions—by eliminating the previously existing power of the legislative appointing authorities to remove any appointee "at will" and by providing instead that each such appointee shall serve a four-year term—significantly reduces the potential control that the legislative appointing authorities may have over their appointees. (Accord, *State Through Bd. of Ethics v. Green*, *supra*, 566 So.2d 623, 626 [noting, in upholding statute authorizing legislative appointment of members of an executive board that "there is no continuing relationship between the Legislature and the appointees which extends the Legislature's control over the appointees in any significant degree beyond the original appointment"].) Marine Forests maintains, however, that the appointing authorities' continued power to reappoint a sitting commissioner itself is incompatible with the separation of powers clause. We conclude that this claim lacks merit.

To begin with, Marine Forests cites no authority to support its contention that a legislative appointing authority's power to reappoint an incumbent officer is constitutionally suspect under separation of powers principles. As a general matter, in the absence of a specific limiting provision, the authority to appoint a person to an office includes the authority to reappoint the incumbent to a new term. We have not found any case holding that an appointing authority's power to reappoint an incumbent to office grants the appointing authority a constitutionally impermissible measure of control over the officeholder. In *People v. Freeman*, *supra*, 80 Cal. 233, this court upheld the validity, under the California separation of powers clause, of a statutory provision authorizing the Legislature to appoint members of an executive commission. In *Freeman*, the statute in question provided that the commission members would serve a four-year term, and nothing in the statute suggested that the Legislature was not free to reappoint a member to a new term once his or her existing term had expired.

Moreover, apart from the absence of supporting authority, we believe the contention is untenable on its merits. Under the current statute, as under the statute at issue in *Freeman*, each commissioner appointed by the Senate Rules Committee or the Speaker of the Assembly is appointed for *a four-year term*. Tenure of that substantial length of time—the term of office of the Governor of California and of the President of the United States—generally has been viewed as affording a public official a substantial degree of independence. In creating so-called independent administrative agencies within the federal government that are intended to act with a considerable degree of autonomy, Congress frequently has established offices with similar terms, and generally has not precluded the reappointment of such officers. (See, e.g., 42 U.S.C. § 15323(b) [four-year term for members of the Federal Election Assistance Commission]; 47 U.S.C. § 154(c) [five-year term for members of the Federal

Communications Commission]; 15 U.S.C. § 78d(a) [five-year term for members of the Securities and Exchange Commission].) Indeed, the four-year term now served by a Coastal Commission member appointed by the Senate Rules Committee or the Speaker of the Assembly is longer than the average length of time that an incumbent has served in the office of Speaker of the Assembly since the advent of legislative term limits in 1990.[24]

 Further, in addition to prescribing the length of the term of office served by each of the Commission members appointed by the Senate Rules Committee and the Speaker of the Assembly, the Coastal Act contains numerous procedural provisions governing the conduct of all Commission members with regard to matters before the Commission. The Act sets forth extensive provisions explicitly aimed at ensuring the fairness and transparency of Commission action (§§ 30320–30329), as well as detailed substantive standards that Commission members are duty-bound to apply (see, e.g., § 30604) through decisions, based upon evidence in the record before the Commission and with reasons stated, that are subject to judicial review. (§ 30801.) These provisions provide additional significant safeguards to ensure that, in the actual performance of their official duties, Commission members are not interfered with or controlled by their appointing authority during their term of office.

## 2

Marine Forests additionally asserts that even if the current Coastal Act provisions do not violate the separation of powers clause with regard to individual members of the Commission, the challenged provisions nonetheless should be found unconstitutional in relation to their effect on the actions of the Coastal Commission as a whole. In this regard, Marine Forests contends that the statutes are fatally flawed because they permit a majority of the voting members of the Commission to be appointed by the Legislature.

Again, Marine Forests cites no authority supporting the proposition that the separation of powers clause embodied in article III, section 3, of the California Constitution prohibits the Legislature from enacting a statute that provides for a majority of the members of an executive commission to be appointed by the Legislature. On the contrary, as we already have seen, this court in *People v. Freeman, supra,* 80 Cal. 233, rejected a separation of powers challenge to a statute authorizing the Legislature to appoint *all* the members of a state executive board.

---

[24] Since 1990, nine individuals have served as Speaker of the Assembly: Willie L. Brown, Jr., Doris Allen, Brian Setencich, Curt Pringle, Cruz Bustamante, Antonio R. Villaraigosa, Robert M. Hertzberg, Herb J. Wesson, and Fabian Nuñez.

In any event, it is an oversimplification and potentially misleading to describe the Coastal Act provisions here at issue as authorizing *the Legislature* to appoint a majority of the voting members of the Coastal Commission.

To begin with, the statute does not authorize the Legislature, as a whole, to appoint any member of the Commission, but rather provides for the appointment of one-third of the voting members by the Governor, one-third by the Senate Rules Committee, and one-third by the Speaker of the Assembly. Although at times the Speaker of the Assembly and the members of the Senate Rules Committee will belong to the same political party, that certainly is not invariably the case, and even when these two appointing authorities happen to represent the same political party the two will not necessarily share the same views regarding either the best qualifications for membership on the Coastal Commission or the merits of issues that are likely to come before the Commission. The appointment structure established by the current Coastal Act provisions is distinguishable from one providing for appointment of executive officials by a joint vote of all members of the Legislature (see, e.g., *People v. Langdon, supra,* 8 Cal. 1) or by some comparable mechanism.

In considering the practical effect of this aspect of the statutory scheme, it is instructive to keep in mind that the provisions of the California Coastal Act dividing the authority to appoint the members of the Coastal Commission equally among the Governor, the Speaker of the Assembly, and the Senate Rules Committee were modeled largely upon the provisions of the 1972 coastal conservation initiative—a measure placed on the ballot by the efforts of concerned citizens outside the Legislature. The evident purpose of dividing the appointment authority in this fashion was *to disperse* such authority in order to avoid a situation in which one official who might not be sympathetic to the purpose and objectives of the Coastal Act could attempt to subvert those aims by appointing a majority of Commission members who are hostile to those goals. In this regard, this aspect of the statutory scheme serves an objective that is analogous to one of the principal purposes of the separation of powers clause, *the avoidance of an aggregation of power in a single entity or officer.* (Accord, *State Through Bd. of Ethics v. Green, supra,* 566 So.2d 623, 626 ["Of course, the fact of original appointment may suggest the existence of some influence by the Legislature over the appointees, but even this possibility of control is dissipated by the spreading of the appointive powers among the Governor, the Senate, and the House of Representatives."]; *Parcell v. State* (1980) 228 Kan. 794 [620 P.2d 834, 835–837] [upholding validity of 11-person elections commission, five members of which were appointed by the governor and six by members of the legislature (two by the president of the senate, two by the speaker of the house of representatives, one by the minority leader of the senate, and one by the minority leader of the house of representatives)].)

Furthermore, under the governing statutes neither the Senate Rules Committee nor the Speaker of the Assembly has unfettered discretion in making appointments to the Commission. As noted above, fully one-half of the appointees of both the Senate Rules Committee and the Speaker of the Assembly must be local public officials who have been nominated to their respective appointing authorities by local bodies from each geographic region covered by the Coastal Act. (§ 30301.2.) This provision affords a further check on the legislative appointing authorities and represents an additional dispersal of the power of appointment.

■■ In addition, the recent amendments of the Coastal Act have enhanced the authority of the Governor in relation to the legislative appointing authorities, inasmuch as the gubernatorial appointees to the Commission continue to serve at the pleasure of the Governor whereas the appointees of the Senate Rules Committee and the Speaker of the Assembly now serve fixed terms. It is also worth noting that all three nonvoting members of the Commission are part of the executive branch. (See, *ante*, at p. 20, fn. 4.) (Accord, *State ex rel. Woods v. Block, supra,* 942 P.2d 428, 436–437 ["[A]lthough the [advisory] members have no voting rights, they still have the ability to influence the decisions of the board"].)

## C

■■ For all of the reasons discussed above, we conclude that the current provisions of the Coastal Act governing the composition and tenure of the voting membership of the Coastal Commission do not violate the separation of powers provision of the California Constitution. Accordingly, the judgment rendered by the trial court, enjoining the Commission from exercising nonlegislative functions in the future, cannot be upheld.

## XI

Although the relevant portion of the underlying complaint sought only injunctive relief and we therefore have determined the validity of the judgment by examining the *current* provisions of the Coastal Act, the parties have requested, in light of the Court of Appeal's conclusion that the prior statutory scheme was unconstitutional, that we clarify the current status of the numerous actions that were taken by the Coastal Commission during the time period in which the prior statutes were in effect. In light of the substantial number of past administrative matters that potentially might be affected and because the question has been extensively briefed, we conclude that it is appropriate to address the issue at this time.

Marine Forests maintains that even if, as we have concluded, the current version of the Coastal Act is constitutional, the prior version of the statutes

was fatally flawed. Marine Forests asserts in this regard that the Court of Appeal correctly concluded that the prior statutory scheme—by providing that the commissioners appointed by the Senate Rules Committee and the Speaker of the Assembly served at the pleasure of their legislative appointing authority and thus could be removed by such appointing authorities at will—rendered a majority of the voting members of the Commission improperly subservient to the Legislature, and for that reason violated the separation of powers clause of the California Constitution.[25] In response, the Attorney General points out that prior provisions of the California Constitution, in addition to authorizing the Legislature to determine how and by whom executive officers should be *appointed*, authorized the Legislature to determine the tenure of executive officers and explicitly provided that when their tenure was not specified, the officer would serve *during the pleasure of the appointing authority*. (See Cal. Const. of 1849, art. XI, § 7; Cal. Const. of 1879, art. XX, § 16.) The Attorney General argues that in light of these earlier constitutional provisions, the prior version of the Coastal Act— specifying that all members of the Commission were to serve at the pleasure of their appointing authority—may not properly be found to violate the separation of powers clause of the California Constitution.

Although there is no question but that the pre-2003 provisions of the Coastal Act pose a much more serious separation of powers question than the current provisions of the Act (cf. *State ex rel. Woods v. Block, supra*, 942 P.2d 428, 438 (conc. & dis. opn. by Martone, J.) [finding that the absence of set terms for legislative appointees "provides the Legislature indirect, yet substantial control over the members it appoints"]), we conclude there is no need to determine definitively the validity of the earlier statutory provisions in order to clarify the status of the numerous actions that were taken by the Commission at a time when its members were selected and served pursuant to the provisions of those statutes. As we shall explain, even if we were to assume (as Marine Forests contends) that the prior version of the statutes violated the separation of powers clause, the past actions of the Commission could not properly be set aside on that ground at this time.

---

[25] In support of this claim, several amici curiae have requested that we take judicial notice of a partial transcript of a July 1987 hearing before the Coastal Commission, and of newspaper articles discussing the hearing, that suggest that in at least one instance during the time that the prior statutory provisions were in effect, a legislative appointing authority removed a legislative appointee to the Commission because of the appointee's substantive position on a pending matter. Because, as we discuss below (*post*, at pp. 53–56), we conclude that past actions of the Commission may not be set aside on the basis of the prior appointment and tenure structure, even if we were to assume that the prior statutory scheme was unconstitutional, the materials in question would not affect our decision in this case. For this reason, we decline to take judicial notice of the material in question. (See, e.g., *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063–1065 [31 Cal.Rptr.2d 358, 875 P.2d 73].) On similar grounds, the additional requests for judicial notice filed by Marine Forests and other amici curiae also are denied.

■ To begin with, the applicable statute of limitations would bar a present challenge to most of the prior actions of the Commission. (See § 30801 [permit decisions of the Commission are final if not challenged by writ petition within 60 days].) Contrary to the contention of Marine Forests, a judicial decision that found the prior version of the applicable statutes unconstitutional would not provide a basis for recommencing the statute of limitations with regard to past actions of the Commission. (See, e.g., *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 815–817 [107 Cal.Rptr.2d 369, 23 P.3d 601].) Furthermore, with regard to those actions of the Commission as to which a timely challenge had been filed and that had proceeded to a final judicial decision, res judicata principles would preclude a present challenge to the final decision. (See, e.g., *Slater v. Blackwood* (1975) 15 Cal.3d 791, 795–797 [126 Cal.Rptr. 225, 543 P.2d 593].)

■ In addition, even with regard to those cases in which a timely separation of powers challenge to the Commission's composition has been raised and that remain pending either before the Commission or the courts, we conclude that under the "de facto officer" doctrine prior actions of the Commission cannot be set aside on the ground that the appointment of the commissioners who participated in the decision may be vulnerable to constitutional challenge. As this court explained in *In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21, 42 [37 Cal.Rptr. 74, 389 P.2d 538]: "The de facto doctrine in sustaining official acts is well established. [Given the existence of] a de jure office, '[p]ersons claiming to be public officers while in possession of an office, ostensibly exercising their functions lawfully and with the acquiescence of the public, are *de facto* officers. . . . The lawful acts of an officer *de facto*, so far as the rights of third persons are concerned, are, if done within the scope and by the apparent authority of office, as valid and binding as if he were the officer legally elected and qualified for the office and in full possession of it.' [Citations.]" (See also *Pickens v. Johnson* (1954) 42 Cal.2d 399, 410 [267 P.2d 801] ["There is no question but that . . . the status of a judge de facto attached to his action. The office to which he was assigned was a de jure office. By acting under regular assignment under a statute authorizing it he was acting under color of authority as provided by law. His conduct in trying the cases and rendering judgment therein cannot here be questioned."].)

Past California cases make clear that the de facto officer doctrine is applicable when the officer in question acts " 'under color of an election or appointment by or pursuant to a public unconstitutional law, before the same is adjudged to be such' " (*Oakland Pav. Co. v. Donovan* (1912) 19 Cal.App. 488, 495 [126 P. 388], quoting *State v. Carroll* (1871) 38 Conn. 449 [9 Am.Rep. 409]; see, e.g., *People v. Elkus* (1922) 59 Cal.App. 396, 407–408 [211 P. 34]), and further establish that the de facto officer doctrine is

applicable even when the challenge to the validity of an officer's appointment or qualifications has been timely raised in an administrative or judicial proceeding contesting the validity of an official action of the officer, because the doctrine contemplates that a valid challenge to the officer's qualifications must be raised and resolved in a separate proceeding. (See, e.g., *Town of Susanville v. Long* (1904) 144 Cal. 362, 364–365 [77 P. 987]; *People v. Bowen* (1991) 231 Cal.App.3d 783, 789–790 [283 Cal.Rptr. 35]; *Ensher, Alexander & Barsoom, Inc. v. Ensher* (1965) 238 Cal.App.2d 250, 256–257 [47 Cal.Rptr. 688].)[26]

Marine Forests maintains that the de facto officer doctrine is inapplicable here because the separation of powers challenge relates to the scope of the actions that the Coastal Commission properly may undertake (assertedly only quasi-legislative actions, and not executive or quasi-judicial actions) rather than to the validity of the appointment of the members of the Coastal Commission. We disagree.

The challenge advanced by Marine Forests relates to the great bulk of the actions that the Commission was statutorily empowered to undertake, and rests on the contention that the Commission was not authorized to perform

---

[26] Marine Forests contends that the de facto officer doctrine should not be applied in cases in which a challenge to the validity of the Commission's composition has been timely raised in the administrative or judicial proceeding, on the ground that application of the doctrine in such cases improperly would deter parties from ever raising an objection to provisions governing the appointment or tenure of Commission members. (Cf. *Ryder v. United States* (1995) 515 U.S. 177, 182 [132 L.Ed.2d 136, 115 S.Ct. 2031].) The pre-2003 provisions governing the appointment and tenure of members of the Coastal Commission had been in effect since the enactment of the Coastal Act in 1976, however, and any individual had ample opportunity to bring an action challenging, under the separation of powers clause, the validity of those provisions in light of the statutory duties the Commission had been granted.

Furthermore, unlike the situation presented in *Ryder* where the United States Supreme Court declined to apply the de facto officer doctrine to an unusual appointment procedure affecting only seven to 10 cases (*Ryder v. United States, supra,* 515 U.S. at p. 185), the failure to apply the de facto officer doctrine where the challenge is to a general statutory provision governing the appointment and tenure of the members of an administrative agency like the Coastal Commission potentially would place hundreds or even thousands of administrative rulings at risk, because once such a challenge has been upheld at the trial court level (or even simply seriously advanced by one litigant), other litigants before the agency routinely might proffer such a challenge in every case, threatening the validity of all subsequent actions of the agency. In the present case, for example, once the trial court sustained Marine Forests' separation of powers claim, numerous other parties, on the same grounds, challenged the Commission's authority to act. Although the trial court's ruling was not a final judicial determination of the constitutional issue, and the trial court stayed its ruling pending appeal, a failure to apply the de facto officer doctrine to any proceeding in which the separation of powers claim timely was raised potentially would place in jeopardy many if not all of the actions taken by the Commission after the trial court's ruling. As is demonstrated by the California decisions cited above, adoption of Marine Forests' position would defeat the principal purpose underlying the de facto officer doctrine. (See, e.g., *Town of Susanville v. Long, supra,* 144 Cal. 362, 365.)

such functions because two-thirds of its members were appointed and were subject to removal at will by legislative rather than executive entities. This type of claim differs fundamentally from a challenge to the Commission's grant or denial of an individual permit or its issuance of an individual cease and desist order—an attack based, for example, on a claim that the Commission's action is not supported by substantial evidence or that the particular conditions imposed on a development permit are not sufficiently related to a legitimate governmental purpose. Instead, the challenge here at issue rests upon features of the Commission members' appointment and tenure that would affect the Commission's authority to act in *all* similar quasi-judicial or executive matters.

 In essence, Marine Forests contends that there was a constitutional defect in the statutory provisions governing the appointment and tenure of the Commission members that rendered the Commission not legally qualified to act on any quasi-judicial or executive matter. As past California decisions demonstrate, a principal purpose of the de facto officer doctrine under California law is to prevent the crippling of an officer's or commission's operations that would occur if this type of claim (which could affect virtually all of the Commission's actions) could be raised in any proceeding challenging an individual action taken by the officer or commission. This debilitating effect is avoided if such a challenge is brought in a separate proceeding that focuses directly on the validity of the officer's or commission's status and in which the requested relief, if ultimately granted by a final judicial decision, would apply only prospectively. (See, e.g., *Town of Susanville v. Long, supra,* 144 Cal. 362, 365.) In light of this objective, the asserted invalidity here at issue is similar to other claimed defects in an officer's legal qualifications to which the de facto officer doctrine has been applied.

Indeed, in *Buckley v. Valeo, supra,* 424 U.S. 1, 142, the United States Supreme Court effectively applied the de facto officer doctrine in a setting directly analogous to that presented here. In *Buckley,* after concluding that the statutory provisions governing the composition of the Federal Elections Commission at issue in that case violated the separation of powers doctrine under the federal Constitution because four of the six voting members of the commission were appointed by members of Congress, the high court nonetheless went on to uphold the validity of all past actions of the commission under the de facto officer doctrine. The court in *Buckley* stated in this regard: "It is . . . our view that the Commission's inability to exercise certain powers because of the method by which its members have been selected should not affect the validity of the Commission's administrative actions and determinations to this date, including its administration of those provisions, upheld today, authorizing the public financing of federal elections. The past acts of the commission are therefore accorded *de facto* validity, just as we have recognized should be the case with respect to legislative acts performed by

legislators held to have been elected in accordance with an unconstitutional apportionment plan." (424 U.S. at p. 142.)[27]

▉▉▉ Marine Forests further contends that the de facto officer doctrine should not be applied to past actions of the Coastal Commission, because in some instances in the past, courts have found that certain actions taken by the Coastal Commission—for example, various requirements imposed by the Commission as a condition of granting a development permit—may have violated the constitutional rights of a party or parties before the Commission. (See, e.g., *Nollan v. California Coastal Com.* (1987) 483 U.S. 825 [97 L.Ed.2d 677, 107 S.Ct. 3141].) But Marine Forests fails to cite any California authority supporting the imposition of such a limitation on the de facto officer doctrine, a limitation that largely would eviscerate the doctrine and that finds no support in its underlying purpose. Of course, if a past action of the Commission remains subject to judicial review and is vulnerable to challenge on some other ground, the de facto officer doctrine will not provide a bar to such a challenge. Under the doctrine, however, the circumstance that the statutory provisions governing the appointment and tenure of the members of the Commission who acted upon a particular matter might be vulnerable to constitutional challenge provides no independent basis for overturning the action taken by the Commission.[28]

Accordingly, we conclude that even if we were to assume that the trial court and the Court of Appeal were correct in determining that the prior version of the Coastal Act provisions governing the composition and tenure of the members of the Coastal Commission violated the separation of powers clause of the California Constitution, past actions of the Commission could not properly be challenged on that ground.

---

[27] Indeed, the high court in *Buckley* permitted the unconstitutionally constituted Federal Elections Commission to continue to act for 30 days after the court's decision was issued, explaining: "We also draw on the Court's practice in the apportionment and voting rights cases and stay, for a period not to exceed 30 days, the Court's judgment insofar as it affects the authority of the Commission to exercise the duties and powers granted it under the Act. This limited stay will afford Congress an opportunity to reconstitute the Commission by law or to adopt other valid enforcement mechanisms without interrupting enforcement of the provisions the Court sustains, allowing the present Commission in the interim to function *de facto* in accordance with the substantive provisions of the Act." (*Buckley v. Valeo, supra,* 424 U.S. at pp. 142–143.)

[28] In support of the argument that past actions of the Commission should be subject to challenge on the basis of the alleged invalidity of the pre-2003 Coastal Act provisions, Marine Forests and several amici curiae argue that the 2003 legislation should not be given retroactive effect. We agree that the 2003 provisions apply only prospectively, but the application of the de facto officer doctrine is not affected by this conclusion. As explained above, the de facto officer doctrine provides that even if the statutory provision under which a public officer is appointed is vulnerable to constitutional challenge, official actions taken by the public officer before the invalidity of his or her appointment has been finally adjudicated may not be overturned on that basis.

## XII

For the reasons discussed above, the judgment rendered by the Court of Appeal, affirming the trial court's judgment enjoining the Coastal Commission from granting, denying, or conditioning permits and from hearing cease and desist orders, is reversed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.

**KENNARD, J.,** Concurring.—In *Obrien v. Jones* (2000) 23 Cal.4th 40 [96 Cal.Rptr.2d 205, 999 P.2d 95], as here, this court considered a challenge under the California Constitution's separation of powers provision (Cal. Const., art. III, § 3) to legislation authorizing interbranch appointments. In both cases, this court rejected the challenge. In *Obrien* I dissented (23 Cal.4th at p. 63), while here I concur, for reasons I now explain.

The laws at issue in *Obrien v. Jones, supra,* 23 Cal.4th 40 granted officers of the executive and legislative branches (the Governor, the Senate Rules Committee, and the Speaker of the Assembly) the authority to appoint and reappoint judges of the State Bar Court (Bus. & Prof. Code, § 6079.1) and altered that court's composition by eliminating public representation (*id.,* § 6086.65). Summarizing my reasons for concluding that these laws were invalid, I wrote: "Because the State Bar Court operates as an arm of this court in hearing attorney discipline matters, and because this court has primary authority over attorney discipline, judges of the State Bar Court are subordinate judicial officers that must be answerable only to this court. Because the law at issue makes State Bar Court judges subservient to members of the political branches, and because it alters the composition of the State Bar Court in a way likely to reduce public confidence in the attorney discipline system, the law is invalid under the separation of powers clause of the California Constitution." (*Obrien v. Jones, supra,* 23 Cal.4th at p. 63.)

The law at issue here (Pub. Resources Code, § 30301) grants the Governor, the Senate Rules Committee, and the Speaker of the Assembly authority to appoint members of the California Coastal Commission, an administrative agency within the executive branch having as its main task the regulation of land use in the state's coastal areas. In performing this task, the commission does not act as an arm of the Governor or of any other executive branch officer, but instead the commission operates independently. Like many administrative agencies, the commission's role is not purely executive, but instead much of its work is quasi-legislative and quasi-judicial. As I have written,

interbranch appointments are justified when the appointee's duties have this hybrid character. (*Obrien v. Jones, supra,* 23 Cal.4th at p. 69 (dis. opn. of Kennard, J.).)

In brief, the interbranch appointment laws at issue in *Obrien,* in my view, improperly invaded this court's authority over attorney discipline, whereas the interbranch appointment laws at issue here do not improperly invade the traditional authority of the Governor or of any other constitutional officer of the executive branch. Moreover, the hybrid character of the California Coastal Commission's duties provides adequate justification for interbranch appointments. For these reasons, I have added my signature to the court's opinion.

**BAXTER, J., Concurring.**—I agree generally with the separation of powers test stated by the majority, and with its application of that test to the narrow circumstances of this particular case. In light of the unique history and function of the Coastal Commission (Commission), I accept the majority's conclusion that the *current* version of the California Coastal Act (Coastal Act; Pub. Resources Code, § 30000 et seq.)[1] does not violate the separation of powers by providing that the Governor, the Senate Rules Committee, and the Speaker of the Assembly shall each *appoint* one-third of the Commission's voting members. I also concur that, technically, we may confine our analysis to the law as currently in effect, because this case concerns only the prospective validity of an injunction, and the "de facto officer" doctrine would protect the official acts of commissioners who held their offices, under color of authority, pursuant to the prior scheme.

As the majority suggests, the Commission is a modern, somewhat hybrid statutory creation. It has succeeded, on behalf of the state, to certain land use planning functions—executive, quasi-legislative, and quasi-judicial—that were traditionally the province of local government. Though formally lodged within the executive branch, the Commission has an independent mission. Neither the Commission nor its members directly assist the Governor, or any other constitutional executive officer, in carrying out that officer's prescribed duties. Hence, legislative participation in appointing the Commission's members does not "impinge[] upon a core zone of executive branch authority" (maj. opn., *ante,* at p. 47), or upon an "exclusively executive prerogative" (*id.,* at p. 46), as prohibited by the separation of powers clause.

Moreover, safeguards contained in the current version of the Coastal Act ensure commissioners, once in office, a substantial measure of insulation from their appointing authorities. Hence, the law's appointment provisions, as now in effect, "do not improperly compromise the ability of the . . .

---

[1] All further unlabeled statutory references are to the Public Resources Code.

Commission['s] [members] individually, or [of] the . . . Commission as a whole, to perform the Commission's functions independently" of the legislative branch. (Maj. opn., *ante,* at p. 48.)

The individual history, nature, and function of this agency make me especially reluctant to overturn the current statutory method of appointing its voting members. In particular, I am mindful that the Commission's long tradition of membership by both state and local representatives, with substantial appointment power vested in both the executive and legislative branches of state government, originated with the voters of California.

As the majority recount, today's Commission has its genesis in a 1972 initiative measure, Proposition 20, enacted by the voters at the November 7, 1972 General Election (hereafter Proposition 20). This measure created a statewide agency, the California Coastal Zone Conservation Commission (1972 statewide commission)—the direct predecessor of the present Commission—as well as six regional commissions (1972 regional commissions) covering the affected coastal areas. (Former §§ 27200–27243, as enacted by Prop. 20.) Each of the 1972 regional commissions included an equal number of local officials and public members—the latter appointed, one-third each, by the Governor, the Senate Rules Committee, and the Assembly Speaker. (Former §§ 27201, 27202, subd. (d), as enacted by Prop. 20.) The 1972 statewide commission itself had 12 voting members—six regional representatives, one appointed by each 1972 regional commission from among its own members, and six public members appointed, one-third each, by the Governor, the Senate Rules Committee, and the Assembly Speaker. (Former §§ 27200, 27202, subd. (d), as enacted by Prop. 20.) The 1972 initiative law was repealed, by its own terms, as of January 1, 1977. (Former § 27650, as amended by Stats. 1974, ch. 897, § 2, p. 1900.)

The initiative's successor legislation, the Coastal Act (§ 30000 et seq., as enacted by Stats. 1976, ch. 1330, § 1, p. 5951 et seq.), created the present statewide Commission, as well as six successor regional commissions that would terminate no later than January 1, 1981. (Former §§ 30300–30305, added by Stats. 1976, ch. 1330, § 1, pp. 5966–5969.) The voting membership of the statewide Commission, like that of its 1972 predecessor, included six regional representatives and six statewide public members—the latter appointed equally, as before, by the Governor, the Senate Rules Committee, and the Assembly Speaker. (Former § 30301, subds. (d), (e), added by Stats. 1976, ch. 1330, § 1, p. 5966.)

In turn, the regional commissions were constituted, and their members were appointed, essentially as under the 1972 initiative scheme. So long as a regional commission remained in existence, its representative on the statewide Commission was selected by the regional commission itself, from

among its own members, as under prior law. When a regional commission ceased to exist, its representative on the statewide Commission would be replaced by a city councilperson or county supervisor from that region, selected from a list of such officials nominated at the local level. The power to appoint this new representative from the list of nominees fell directly to the Governor, the Senate Rules Committee, or the Assembly Speaker according to a specified rotation, so as to ensure that, once all the regional commissions ceased existence, each appointing authority would choose an equal number of regional representatives to the statewide Commission. (Former §§ 30301, subds. (d), (e), 30301.2, 30303, added by Stats. 1976, ch. 1330, § 1, pp. 5966–5969.)

After all the regional commissions had terminated, the Coastal Act was amended to eliminate reference to them, and to confirm that the Governor, the Senate Rules Committee, and the Assembly Speaker shall each appoint one-third of the statewide Commission's 12 voting members. As has been true since the regional commissions ceased existence, this membership is equally divided between regional representatives chosen from lists of eligible local officials submitted by local nominating bodies, and statewide public members. (§ 30301, subds. (d), (e), as amended by Stats. 1991, ch. 285, § 5, p. 1796; § 30301.2, subd. (a), as amended by Stats. 1991, ch. 285, § 6, p. 1796.)

This evolution of the scheme for appointment of the Commission's voting members, though complex, reflects a continuing adherence to the electorate's original desire that the membership of the statewide agency charged with protecting California's coastal resources should be carefully balanced between statewide and local interests, and that appointments to the agency should come from both the executive and legislative branches. Indeed, retention of this system under current law does not suggest a "power grab" instigated by the Legislature itself, but rather an acceptance of the electorate's design, as set forth in the 1972 initiative. After the Commission has operated for some three decades under this scheme, we would be hard-pressed to find that all, or at least most, of its members have been appointed unconstitutionally.

That said, I reserve the right to examine, on a case-by-case basis, other statutory schemes for legislative participation in naming persons to hold positions in the executive branch, as such schemes may now or hereafter exist. My concurrence in today's judgment is narrowly confined to the current Coastal Act. It does not constitute any concession on my part that the Legislature generally may arrogate such nominating authority to itself without running afoul of the separation of powers clause.

The Founders recognized the Legislature as "the branch most likely to encroach on the power[s] of the other branches." (*Carmel Valley Fire Protection Dist. v. State of California* (2001) 25 Cal.4th 287, 298 [105 Cal.Rptr.2d 636, 20 P.3d 533].) Legislators may often have a political incentive to enhance their own authority and influence at the expense of the executive branch and its officials. Such legislative schemes must be scrutinized with the utmost care to ensure that the constitutional functions and prerogatives of the executive are carefully preserved.

Finally, though it is not strictly necessary to address the issue, I note I would find that the Coastal Act *was* constitutionally flawed until amended in 2003. Prior to this amendment, the statute provided that all the Commission's voting members, including those appointed by the Senate Rules Committee and the Assembly Speaker, would serve "for two years *at the pleasure of their appointing power*." (Former § 30312, subd. (b), as enacted by Stats. 1976, ch. 1330, p. 5970, italics added.) Thus, under the former law, the appointing officials or bodies, including those from the Legislature, could *remove* their Commission appointees at will.

The pre-2003 version was in effect when this case came before the Third District Court of Appeal. That court struck down the scheme, concluding that the legislative power both to appoint *and to remove* a majority of the Commission's members violated the separation of powers. As Presiding Justice Scotland stated in his opinion for the court: "[Former] [s]ection 30312 gives the Speaker of the Assembly and the Senate Committee on Rules virtually unfettered authority over the appointment of a majority of the Commission's members, *and wholly unfettered power to remove those members at the will of the Legislature*. The presumed desire of those members to avoid being removed from their positions creates an improper subservience to the legislative branch of government. . . . Consequently, this statutory scheme gives the Legislature excessive control over the Commission in the exercise of powers, and in the execution of duties, that are executive in character." (Italics added.) Spurred by the Court of Appeal's decision, the Legislature promptly amended the law to the form now before us. (§ 30312, as amended by Stats. 2003, 2d Ex. Sess., ch. 1x, § 1.)

Removal at pleasure was an implicit feature of the 1972 commissions established by Proposition 20. (See *Brown v. Superior Court* (1975) 15 Cal.3d 52 [123 Cal.Rptr. 377, 538 P.2d 1137] [1972 regional commissioners].) To the extent the removal power was thus part of the voters' original design in 1972, it is due considerable deference. Nonetheless, I concur fully in Presiding Justice Scotland's conclusion that the pre-2003 version of the Coastal Act overstepped constitutional bounds insofar as it included a legislative removal power. Quite clearly, if officials of the legislative branch have *moment-by-moment control* over the tenure of most of an executive agency's voting

members, the agency cannot perform its executive functions free of undue legislative influence. Accordingly, the removal provision contravened the second prong of the test applied by the majority (see discussion, *ante*), and thus violated the separation of powers.

Brown, J., concurred.

**WERDEGAR, J.,** Concurring.—I agree with the majority that, even were this court to hold that the California Coastal Commission's (Commission) former appointment structure made it essentially a legislative agency prohibited from exercising executive or judicial powers under separation-of-powers principles, the de facto officer doctrine (or a closely related rule) would bar a separation-of-powers challenge to particular executive and quasi-judicial acts of the Commission brought before a court had finally determined, in an action for injunctive or declaratory relief, that the performance of such acts was unconstitutional. For that reason, as the majority explains, we need not decide whether the Commission's former structure did render it subservient to the Legislature. (Maj. opn., *ante*, at p. 53.)

I write separately to stress *why* the de facto officer doctrine (or a closely related rule) applies here. While plaintiffs' separation-of-powers challenge is not, strictly speaking, an attack on the qualifications or appointment of any particular officer, it does, as the majority observes, rest on aspects of the Commission members' appointment and tenure; consequently, if successful, it would, like a collateral attack on an officer's qualifications or appointment to office, undermine the validity of all the Commission's executive or quasi-judicial acts. (Maj. opn., *ante*, at p. 55.) Because of the reasonable public reliance on an agency's prima facie legitimacy, to require that this type of challenge be brought first in an action for prospective relief rather than in a direct attack on past agency actions is appropriate and fair.

The majority, as I understand it, does not embrace any broader doctrine precluding a party from raising fundamental flaws in an agency action directly in challenges to those actions. As a general rule, individuals aggrieved by government actions affecting them or their property may present fundamental legal challenges in a timely complaint or petition directly attacking the government action. (See *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757, 767–769 [16 Cal.Rptr.3d 404, 94 P.3d 538] [challenge to permit conditions imposed under allegedly unconstitutional and preempted ordinance]; *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 819–822 [107 Cal.Rptr.2d 369, 23 P.3d 601] [challenge to continued collection of tax under ordinance allegedly adopted in violation of

state law].) The court's opinion today should not be read as suggesting, instead, that a separate action for declaratory or injunctive relief must generally be successfully pursued before an agency's actions can be challenged as unconstitutional.

With this understanding, I have signed the majority opinion.

Brown, J., concurred.